Greg SHELTON, Appellant–Defendant,

v.

Alice Alaina SHELTON, Appellee–Plaintiff.

No. 82A04–0502–CV–89.

Court of Appeals of Indiana.

Oct. 12, 2005.

Transfer Granted Jan. 18, 2006.

John P. Brinson, Evansville, IN, Attorney for Appellant.

Steven K. Deig, Law Offices of Steven K. Deig, Laurie Baiden Bumb, Evansville, IN, Attorneys for Appellee.

**OPINION**

ROBB, Judge.

Greg Shelton ("Father") appeals from the trial court's order denying his petition to modify custody of his daughter, D.S., and ruling on the issues of modification of parenting time, the definition of family, and scheduling of extra-curricular activities. Father appeals only the trial court's definition of family. We reverse and remand.

*Issue*

Father raises one issue for our review, which we restate as whether the trial court properly defined "family," as used in section I(C)(3) of the Indiana Parenting Time Guidelines, to include stepparents and grandparents for the purpose of determining when Father must first be offered the opportunity to provide childcare for D.S.

*Facts and Procedural History*

When D.S. was less than four years old, Father's marriage to Alice Alaina Shelton ("Mother") was dissolved. The trial

court's amended order and decree of dissolution of marriage, issued in May 1999, gave the parties joint legal custody, designated Mother as D.S.'s primary physical custodian, and established Father's visitation times. A provisional order issued during the dissolution proceedings was incorporated into the trial court's decree, including a clause specifying that "[i]n the event either party needs a baby sitter during his/her custody of the child, he/she shall give the other parent the first opportunity to baby sit [sic]." Appellant's Appendix at 21.

When D.S. started kindergarten in 2000, Father regularly picked D.S. up from after-school daycare at 3:10 on Mondays, Wednesdays, and Fridays to visit with her until Mother collected her from Father's home between 5:30 and 6:00. This was not scheduled visitation time, but rather additional parenting time when Mother was unavailable due to her work schedule. Father could not follow this routine on Tuesdays and Thursdays because he commonly worked overtime on those days. Additionally, D.S.'s maternal grandmother ("Grandmother") regularly provided childcare after school once a week, usually starting at 2:00 on Tuesdays. D.S. spent those afternoons at her grandparents' home in Newburgh, Indiana.[1]

Father filed a petition for modification in August 2002, dealing in part with the issue of providing childcare for D.S. The trial court's order, issued in December 2002, stated in relevant part:

Since the parties disagree as to the definition of "babysit" as depicted in their Provisional Order, the Court shall adopt [section I(C)(3) of the Indiana Parenting Time Guidelines] in this respect.... When it becomes necessary that the

child be cared for by someone other than a parent or family member, the parent needing the child care shall first offer the parent the opportunity for additional parenting time. The other parent is under no obligation to provide the child care. If the other parent elects to provide this care, it shall be done at no cost.

Appellant's App. at 38.

Mother was remarried in September 2003. In February or March 2004, Father's overtime work was terminated, resulting in his availability to care for D.S. every afternoon. Father began picking D.S. up from Grandmother's house on the day she visited with Grandmother although D.S. had only been there approximately an hour. This "concerned" Grandmother, and Mother, by counsel, sent Father a letter objecting to his continued collection of D.S. from Grandmother's house. Tr. at 303.

On March 31, 2004, Father filed a petition to modify physical custody of D.S. The trial court heard evidence, and was given the parties' consent to decide issues pertaining to parenting time, including the definition of family. The trial court denied Father's petition, and defined the portion of the Indiana Parenting Time Guidelines previously adopted:

The Court defines family to include step-parents and grandparents (not step-grandparents) and the parties may leave the child with these individuals without giving the other parent the right of first refusal. However, the parties may not leave the child with grandparents two (2) consecutive weekends on their back-to-back weekends.

1. Newburgh is located approximately ten miles from Evansville, where D.S. and both of her parents reside.

Appellant's App. at 12. Father now appeals the trial court's order only to the extent of this definition, and its repercussions on his opportunity for additional parenting time.

### Discussion and Decision

### I. Standard of Review

■ We generally give "considerable deference to the findings of the trial court in family law matters" as a reflection that "the trial judge is in the best position to judge the facts, ... to get a sense of the parents and their relationship with their children—the kind of qualities that appellate courts would be in a difficult position to assess." *MacLafferty v. MacLafferty,* 829 N.E.2d 938, 940 (Ind.2005); *accord Leisure v. Wheeler,* 828 N.E.2d 409, 414 (Ind.Ct.App.2005) ("In general, we review custody modifications for abuse of discretion, with a preference for granting latitude and deference to our trial judges in family law matters.") (quotation omitted). Even so, our supreme court has recognized that "the Legislature and this Court have promulgated a series of statutes, rules, and guidelines—standards that bring consistency and predictability to the many family law decisions." *MacLafferty* 829 N.E.2d at 941. The Indiana Parenting Time Guidelines, developed by the Domestic Relations Committee of the Judicial Conference of Indiana, are counted among these.[2]

■ Although substantial weight is accorded to the trial court's factual conclusions and credibility determinations, "to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result." *Id.* We do not defer to the trial court's conclusions of law. *Carmichael v. Siegel,* 754 N.E.2d 619, 625 (Ind.Ct.App.2001). In the case at hand, interpretation of language incorporated from the Indiana Parenting Time Guidelines into the amended order and decree of dissolution is a question of law that we review *de novo,* without deference to the trial court's legal conclusions. *Id.*

### II. Definition of Family under the Indiana Parenting Time Guidelines

■ Father argues that the trial court's definition of "family" improperly placed him in a tertiary position to gain additional parenting time when Mother was unavailable to care for D.S. He suggests that limiting the definition of "family" to household members would better comport with the intent of the Indiana Parenting Time Guidelines, allowing him the right of first refusal before Grandmother and D.S.'s stepfather if he is not part of Mother's household.[3] Mother contends that such a narrow definition was not included in the guidelines, and that the commentary to section I(C)(3) refers to the necessity of hiring a paid childcare provider for the right of first refusal to be applicable.

In *Leisure,* this court recently addressed allegations that a mother was denied additional parenting time where the child's father had not offered the mother first refusal to care for the child after school. Instead, he allowed others, including the child's grandmother, to provide childcare for periods less than three hours

---

2. In their briefs, both parties mistakenly refer to the guidelines as statutory in nature.

3. The record is unclear as to whether D.S.'s stepfather resides with Mother. At the time the trial court heard evidence, the transcript reflects that he had "moved down to his parent['\]s house for a little bit" after an "incident" between his family and Mother. Tr. at 623.

in duration. *Leisure,* 828 N.E.2d at 416. Importantly, separate orders stated that Mother was to have "liberal possession of the children as can be agreed between the parties," but that "Mother shall not be the regular child care provider for the minor children...." *Id.* at 412. She argued that statutory factors considered when modifying custody had substantially changed, including interference with her relationship and interaction with the child by denial of the opportunity for additional parenting time. *Id.* at 414, 416. We held that the trial court did not err by refusing to modify custody on this basis.

The appeal in the present case centers on the clarification of when the opportunity for additional parenting time is to be offered, not upon using it as a means to modify custody. The trial court in *Leisure* did not attempt to define the term "family" as used in section I(C)(3) of the Indiana Parenting Time Guidelines. Moreover, there is no language to preclude Father from being a regular childcare provider for D.S., and agreement exists between the parties, although not explicitly, that Father may care for D.S. after school, which has been ongoing since D.S. started kindergarten in 2000. Because *Leisure* differs significantly, it is not dispositive of the question of law at hand.

In the case at bar, the trial court's definition if taken literally is correct. The phrase "family member" is ordinarily inclusive of relations such as grandparents or stepparents.[4] However, the Indiana Parenting Time Guidelines impose a preference for parental childcare, founded "on the premise that it is usually in a child's best interest to have frequent, meaningful and continuing contact with each parent." Parenting Time G., Preamble. This principle pervades the guidelines, and is apparent in the rationale of section I(C)(3): the parent without physical custody is given the opportunity for additional parenting time when the custodial parent is regularly unavailable. The practical outgrowth of this,[5] included in the section's language, is that the best interests of the child are also served by extending the parental childcare preference to responsible family members within the custodial parent's household, also the child's household. As a result, the definition most appropriate under the rationale of section I(C)(3) is that "family member" must be limited to a person within the same household as the parent with physical custody.

■ Mother's argument, based upon the comment to section I(C)(3), that Grandmother is not a hired childcare provider is insufficient to overcome the preference for parental childcare. The commentary is not an enforceable rule, but guides application of the rule by providing explanation and "setting forth the child centered philosophy behind the rule." Parenting Time G., Preamble cmt. 3. In this instance, the comment clearly rests upon the concept that children benefit most from spending time with a parent. To that end, when the

---

4. The Indiana Parenting Time Guidelines acknowledge a child's basic need "[t]o develop and maintain meaningful relationships with other significant adults (grandparents, stepparents and other relatives) as long as these relationships do not interfere with or replace the child's primary relationship with the parents." Ind. Parenting Time Guidelines, A Child's Basic Needs (8). This may have guided the trial court's definition of the term "family." However, this need is listed last, after the child having "continuing care and guidance from each parent," enjoying "regular and consistent time with each parent," and having "a stable, consistent and responsible child care arrangement when not supervised by a parent." *Id.* at (2), (5), (7).

5. The commentary to section I(C)(3) states that the rule for additional parenting time is intended to be practical.

parent with physical custody or a responsible member of that parent's household cannot care for the child, the noncustodial parent is to be offered the right of first refusal regardless of whether a non-household family member can care for the child without cost. Moreover, Mother has not shown circumstances such as distance, transportation, or time that make Father's exercise of his option for additional parenting time impractical. Relegating Father's interest in additional parenting time to third-in-line abrogates the goal of the Indiana Parenting Time Guidelines—promoting the best interests of the child through frequent, meaningful, and continuing contact between children and their parents.

### Conclusion

The trial court improperly limited Father's opportunity for additional parenting time by defining too broadly those members of Mother's family included under the language adopted from section I(C)(3) of the Indiana Parenting Time Guidelines. We therefore reverse that provision of the trial court's order, and remand for the trial court to modify its opinion.

Reversed and remanded.

KIRSCH, C.J., and MAY, J., concur.