

FILED

Feb 09 2015, 9:53 am

CLERK
of the supreme court,
court of appeals and
tax court

**ATTORNEY FOR APPELLANT**

Mark Small
Indianapolis, Indiana

**ATTORNEYS FOR APPELLEE**

Ryan H. Cassman
Cathy M. Brownson
Coots Henke & Wheeler, P.C.
Carmel, Indiana


Michael Ghosh
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Marriage of:
Meleeka Clary-Ghosh,

*Appellant-Defendant,*

v.

Michael Ghosh,

*Appellee-Plaintiff*

February 9, 2015

Court of Appeals Cause No.
29A04-1406-DR-275

Appeal from the Hamilton Superior
Court
Cause No. 29D03-0908-DR-2586

The Honorable William J. Hughes,
Judge

**Barnes, Judge.**

# Case Summary

Meleeka Clary-Ghosh appeals the trial court's modification of parenting time and child support, the award of attorney fees to her ex-husband, Michael Ghosh, as a sanction for contempt, and the denial of her request for the appointment of a parenting time coordinator. We affirm.

# Issues

Meleeka raises four issues, which we restate as:

  I.   whether the trial court properly modified her parenting time;

  II.  whether the trial court properly imputed income to her;

  III. whether the trial court properly found her incontempt and ordered her to pay a portion of Michael's attorney fees; and

  IV.  whether the trial court properly denied her request for a parenting time coordinator.

# Facts

Meleeka and Michael were married and had a son, M.G. The marriage was dissolved and, in 2010, Michael was awarded legal and physical custody of then two-year-old M.G. Meleeka was awarded parenting time overnight every Wednesday at 6:00 p.m. until Thursday at 10:00 a.m. and alternating weekends, beginning at 6:00 p.m. on Friday and continuing until Monday at 10:00 a.m. Meleeka, a full-time doctoral student, was not ordered to pay any child support.

Meleeka and Michael's relationship was acrimonious and resulted in the filing of numerous motions and petitions following the dissolution, including several contempt petitions by both parties, a request for the appointment of a parenting time coordinator and a motion to modify custody by Meleeka, and motions to modify parenting time and child support by Michael.

After several hearings, the trial court found Michael in contempt for failing to forward school information about M.G. to Meleeka. As a sanction, the trial court issued a $100 fine, which was suspended, and ordered him to pay $500 of Meleeka's attorney fees. The trial court also found that Meleeka was in contempt for her failure to pay school fees in the amount of $7,323.69. As an additional sanction for Meleeka's contempt and as an exercise of its authority to apportion attorney fees in a dissolution case, the trial court awarded Michael $8,000 in attorney fees.[1] The trial court then issued an order denying Meleeka's request for a parenting time coordinator. Finally, the trial court granted Michael's motion to modify child support and his motion to modify parenting time. In doing so the trial court imputed annual income of $40,000.00 to Meleeka and modified her parenting time to one three-hour mid-week visitation

---

[1] The trial court also ordered Meleeka to pay $1,000 of Michael's attorney fees as a sanction for her refusal to provide financial discovery and her failure to comply with Local Rules. Although she mentions the failure to provide financial information in her issue statement, she does not develop any argument supported by authority on this point. This issue is waived. *See Dickes v. Felger*, 981 N.E.2d 559, 562 (Ind. Ct. App. 2012) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."); Ind. Appellate Rule 46(A)(8)(a).

and alternating weekend visitation from 5:00 p.m. Friday until 6:00 p.m. Sunday. Meleeka now appeals.

## Analysis

[6] It appears that the trial court entered sua sponte findings. In such a situation, the specific factual findings control only the issues that they cover, and a general judgment standard applies to issues upon which there are no findings. *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013), *aff'd on reh'g*. "It is not necessary that each and every finding be correct, and even if one or more findings are clearly erroneous, we may affirm the judgment if it is supported by other findings or is otherwise supported by the record." *Id.* We may affirm a general judgment with sua sponte findings on any legal theory supported by the evidence. *Id.* In reviewing the accuracy of findings, we first consider whether the evidence supports them. *Id.* We then consider whether the findings support the judgment. *Id.* "We will disregard a finding only if it is clearly erroneous, which means the record contains no facts to support it either directly or by inference." *Id.*

[7] A judgment also is clearly erroneous if it relies on an incorrect legal standard, and we will not defer to a trial court's legal conclusions. *Id.* at 998-99. We give due regard to the trial court's ability to assess the credibility of witnesses and will not reweigh the evidence, and we must consider only the evidence most favorable to the judgment along with all reasonable inferences drawn in favor of the judgment. *Id.* at 999. Additionally, we "'give considerable deference to the

findings of the trial court in family law matters . . . .'" *Id.* (quoting *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005)). This deference is a reflection that the trial court is in the best position to judge the facts, ascertain family dynamics, and judge witness credibility. *Id.* "'But to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result.'" *Id.* (quoting <u>MacLafferty</u>, 829 N.E.2d at 941).

### I. Modification of Parenting Time

[8] Meleeka argues that the trial court improperly reduced her parenting time. On this issue, the trial court found:

> 15. The Court's orders regarding parenting time are no longer in the best interest of the minor child and [sic] evidenced by the ongoing litigation occurring between these parties concerning even the most simple issues for visitation. Because more structure and definitive times and dates are required The Court's Order of January 4, 2011 is hereby modified as follows . . . .

[9] Appellant's Amended App. p. 14.

[10] Indiana has long recognized that the right of parents to visit their children is a precious privilege and that a non-custodial parent is generally entitled to reasonable visitation rights. *Perkinson v. Perkinson*, 989 N.E.2d 758, 762 (Ind. 2013). Indiana Code Section 31-17-4-2 provides:

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the

child's physical health or significantly impair the child's emotional development.

[11] Meleeka contends that the trial court reduced her parenting time without finding that parenting time might endanger M.G.'s physical health or significantly impair his emotional development. Meleeka, however, provides no authority for the proposition any reduction of parenting time is a restriction of parenting time as anticipated in Indiana Code Section 31-17-4-2. Instead she cites to a dictionary definition of "restrict" and a 1977 case involving a prior version of the statute in which we concluded visitation was improperly restricted without the necessary findings when it was reduced from one weekend a month, two hours per week, and alternating holidays and birthdays to one Sunday a month from 8:00 a.m. to 8:00 p.m. *Milligan v. Milligan*, 174 Ind. App. 40, 43, 365 N.E.2d 1244, 1246 (1977).

[12] Notably, *Milligan* did not involve the Parenting Time Guidelines, which were adopted in 2001, and involved a substantial restriction to a parent's visitation. Here, however, Meleeka had previously been awarded parenting time in excess of the specific parenting time provisions in the Parenting Time Guidelines. *See* Ind. Parenting Time G. II(B)(1) (2001).[2] In an attempt to minimize conflict

---

[2] Although there was some dispute regarding the applicability of the 2013 amendments to the Parenting Time Guidelines during the various hearings, the 2013 amendments did not substantively modify this Guideline. Both versions call for regular parenting time on alternating weekends from Friday at 6:00 p.m. until Sunday at 6:00 p.m., one evening per week, preferably midweek for a period of up to four hours but not later than 9:00 p.m., and on all scheduled holidays. *Cf.* Parenting Time G. II(B)(1) (2001) *to* Parenting Time G. II(D)(1) (2013).

between the parties, the trial court eliminated overnight visitation on school nights. The result is a parenting time award that is more consistent with the specific parenting time provisions of the Parenting Time Guidelines. The commentary to the Parenting Time Guidelines explains that the Guidelines "represent the minimum time a non-custodial parent should spend with a child . . . ." Parenting Time G. Preamble cmt. 2.[3] Thus, Meleeka's parenting time was not reduced below the minimum time described in the Parenting Time Guidelines, and we are not convinced that the reduction amounted to a restriction of parenting time for purposes of Indiana Code Section 31-17-4-2.

[13] Because the parenting time modifications were consistent with the Parenting Time Guidelines, we do not believe an endangerment or impairment finding was necessary. Instead, the trial court was permitted modify Meleeka's parenting time if it served M.G.'s best interests. The evidence showed that Meleeka's overnight parenting time on school nights was a source of disagreement for the parties. Thus, the elimination of these overnights was intended to reduce conflict, which was in M.G.'s best interests. Meleeka has not established that the trial court abused its discretion in modifying her parenting time.[4]

---

[3] Similarly, the 2013 amendment provides that the "Guidelines represent the minimum time a non-custodial parent should spend with a child when the parties are unable to reach their own agreement." Parenting Time G. Preamble (B) cmt 2 (2013).

[4] In her reply brief, Meleeka summarily contends that the trial court failed to find a change of circumstances necessary to modify visitation. Because a party may not raise an issue for the first time in a reply brief, this

## *II. Modification of Child Support*

[14] Meleeka contends that the trial court erred in imputing income to her and modifying her child support obligation. A trial court enjoys wide discretion in imputing income to ensure that the child support obligor does not evade his or her support obligation. *Sexton v. Sedlak*, 946 N.E.2d 1177, 1188 (Ind. Ct. App. 2011), *trans. denied*. "Trial courts may impute income to a parent for purposes of calculating child support upon determining that he or she is voluntarily unemployed or underemployed." *Sandlin v. Sandlin*, 972 N.E.2d 371, 375 (Ind. Ct. App. 2012).

[15] On this issue, the trial court made extensive findings:

> 4.     Mother, is not employed. She has voluntarily left the workforce to pursue and [sic] doctoral degree and contends she is a full time student. However, the evidence presented established that Mother has access to significant income and is able to pay child support. The evidence also establishes that Mother is voluntarily under employed and engages in behaviors apparently designed to display her as indigent while living a very nice lifestyle.
>
> * * * * *
>
> 6.     Mother has not filed a financial declaration. Mother has apparent unfettered access to a business account for an MCM Fashions, LLC, (an account she opened as registered agent for the

---

issue is waived. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) ("The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived.").

LLC). She claims her only sources of income are student loans, personal loans and gifts from her brother and other persons, and formerly, contributions from her mother's benefits. Regular and continuing payments made by family member(s) that reduce Mother's costs for rent, utilities, or groceries, may be the basis for imputing income. It is clear by a review of the MCM account records that Mother uses funds in this account to pay her living and personal expenses. The Court's order of May 12, 2014 found that Mother has had access to approximately $75,000.00 over the last two years.

7.      Additionally, Mother has traveled out-of-town on at least 36 occasions from October 2011 through June 2014 to the following locations:  Boston, Miami, Chicago, Orlando, Ohio, Minneapolis, Niagara Falls, North Carolina, Houston, Palm Springs, Bahamas, Jamaica, New York, San Diego, and Oregon. Some of these trips are related to her ongoing doctoral education and others are not.

8.      Mother also testified that she previously owned three vehicles (2 Mercedes and 1 Minivan), but gave them to her brother. However even though she "gave" these items to her brother, she maintains possession of the vehicles, insures and provides for their maintenance. Mother's claim that these vehicles are not titled to her is credible, but the Court finds the transfer of title to be an unsuccessful attempt to mask the true ownership of these vehicles from consideration herein. This is but one example of the type of financial obfuscation Mother has engaged in to attempt to prevent this Court from making an informed child support determination.

9.      The [Indiana Child Support Guidelines] gives the trial court wide discretion to impute income to a parent when it is convinced the parent's unemployment or underemployment has been contrived for the sole purpose of evading support obligations. Mother's net worth and expenditures are also factors in determining the ability to pay child support. Mother has chosen to not seek additional work despite having both a Bachelor's Degree and a Master's Degree. Based on Mother's work history, education, the amount she receives from family and friends, having her mother as a tenant, Mother's bank records showing amounts received by her business entity and other

evidence at hearing regarding amounts Mother has spent on her own living and personal expenses, Mother's income for support purposes is at least $40,000.00, or $769.00 per week. Mother has previously demonstrated the ability to earn this amount of income while residing in central Indiana with the educational accomplishments she has already obtained.

10.     Mother has two prior born children in her custody for which she receives child support. Mother also has an obligation to provide support to those children; however, Mother chose not to present any evidence that would permit the Court to make an appropriate determination of that obligation under the Indiana Uniform Child Support Guidelines.

Appellant's Amended App. pp. 11-13.

[16]    Meleeka contends there was no evidence indicating she "was underemployed to shirk her responsibilities." Appellant's Br. p. 12. It was the role of the trial court, not this court, to assess the credibility of witnesses. *Stone*, 991 N.E.2d at 999. Our review of the record confirms there was evidence to support the inference that Meleeka was attempting to avoid her child support obligation. To the extent Meleeka argues otherwise, she is asking us to reweigh the evidence, which we cannot do.

[17]    As for Meleeka's contention that the trial court failed to explain which trips were for educational purposes, the trial court acknowledged that some of the trips were for educational purposes, and we fail to see how a more specific allocation of the trips would have altered the outcome. Likewise, Meleeka's argument that the trial court should not have considered her student loans or the child support she received for her other children as a basis for calculating

child support is not a basis for reversal. There simply is no indication that the trial court considered Meleeka's student loans or other child support as a basis for imputing income to her. Meleeka has not established that the trial court abused its discretion by imputing income to her.

### III.  Contempt Findings

[18]  Meleeka challenges the trial court's contempt findings. "A party that is willfully disobedient to a court's order may be held in contempt of court." *Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 202 (Ind. 2012). "Whether a person is in contempt of a court order rests within the trial court's discretion, and we review the trial court's finding for an abuse of discretion." *In re G.B.H.*, 945 N.E.2d 753, 755 (Ind. Ct. App. 2011). An abuse of discretion occurs only when the trial court's decision is against the logic and effect of the facts and circumstances before the trial court. *Id.* "We do not reweigh the evidence or judge the credibility of witnesses, and we will affirm the trial court's contempt finding unless review of the record leaves us with a firm and definite belief that a mistake has been made." *Id.*

[19]  Meleeka first challenges the trial court's contempt finding based on her failure to pay M.G.'s school fees. On this issue, the trial court found:

> 3.      [Michael's] Motion for Contempt and Attorney Fees filed January 14, 2013 alleges that [Meleeka] has failed to pay sums of money ordered paid by her for school fees. [Michael] has met his burden on that issue, and on the issue that [Meleeka] has had resources available to her to make some payments but has refused to make any payments. In the time period at issue, [Meleeka] has used resources for at least two leisure trips,

one to Chicago and one to Florida. Contempt must be used sparingly when sought in a situation such as this for the failure to pay money. At the time the contempt action was instituted, [Meleeka] was under an ongoing obligation to pay 33% of expenses for [M.G.'s] preschool and was paying nothing. Since the motion was originally filed in January 2013, [M.G.] is no long attending preschool. [M.G.] now attends public schools. The sum due under the Court's prior orders can now be fixed. The Court finds [Meleeka] in contempt of Court for failure to pay school fees and orders judgment entered in favor of [Michael] and against [Meleeka] in the sum of $7,323.69.

Appellant's Amended App. pp. 5-6.

[20] Meleeka contends the evidence does not support the finding that she failed to make payments because it is undisputed that Michael received $1,024.97 from the bankruptcy trustee in Meleeka's bankruptcy case for his $18,600.91 claim against Meleeka's estate, which claim included the unpaid school fees. There is no evidence in the record that Meleeka made any additional payments toward M.G.'s school fees as previously ordered by the trial court. We cannot conclude that the trial court's finding on this issue was contrary to the evidence.

[21] Likewise, Meleeka's suggestion that she had previously paid $1,065.00 toward school costs is not sufficient to establish that the trial court's finding was clearly erroneous because Michael explained that those payments were "already accounted for on the prior order . . . . So since then I haven't received any payments from her." May 12, 2014 Hr. Tr. p. 142. The trial court did not

abuse its discretion in finding that Meleeka failed to make school payments pursuant to its order.[5]

[22] Meleeka also argues that the trial court erroneously found her to be litigious and awarded Michael attorney fees when he had also been found in contempt. At the May 12, 2014 hearing the trial court addressed several outstanding filings including multiple contempt petitions. In its order, the trial court found Meleeka had not proven her claim that Michael did not comply with the holiday parenting time schedule, found Michael in contempt for failing to relay school information to Meleeka, found Meleeka in contempt for failing to pay school fees, and found that Michael failed to establish one of his contempt allegations. Regarding Michael's contempt, the trial court found his actions were "mitigated, to large extent, because he believed he had good defensible reasons for not sharing the incident reports with [Meleeka] because of the manner she used those reports he did provide to her." Appellant's Amended App. p. 5. Nevertheless, the trial court imposed a suspended fine and ordered Michael to pay $500 of Meleeka's attorney fees.

[23] Regarding Meleeka's claim that Michael had failed to comply with the Parenting Time Guidelines for Thanksgiving 2012 and Christmas 2012, the trial

---

[5] Michael offered Exhibit 3 to explain his calculation of $7,323.69 in school fees owed by Meleeka pursuant to an October 3, 2011 order. This exhibit included a credit for the payment by the bankruptcy trustee. Thus, there is no dispute that the trial court's contempt order took into account the $1,024.97 credit.

court found that Meleeka conclusively established Michael had complied with the Parenting Time Guidelines and that her petition was filed before the Christmas 2012 visitation. The trial court characterized this contempt petition as "frivolous, and an effort to exacerbate the litigious nature of these proceedings." *Id.* at 4-5. On the award of attorney fees to Michael, the trial court found:

> 5. [Michael] seeks attorney fees in excess of $14,000 and pleads with the Court to impose those fees because, "This has got to Stop!" The Court finds that [Meleeka] has pursued a litigious path when litigation was neither warranted nor necessary . . . . However, the imposition of attorney fees should be a sanction of last resort because such a sanction can inappropriately chill the constitutional exercise of the right of access to the Courts. The Court finds in this instance that the imposition of such a sanction is appropriate. On the other hand [Michael] has also been found in contempt for failure to abide by the Indiana Parenting Time guidelines in providing "notices" from the school as required by the guidelines. The Court also notes that [Meleeka] has at times made allegations and taken indefensible legal positions herein without merit which have unnecessarily increased attorney fees for [Michael]. The Court also notes that [Meleeka] claims she has no money to pay these expenses, but has for the past two years had access to a bank account she opened as a resident agent through which over $75,000 per year has flowed. In addition, [Meleeka] clearly enjoys a life style far superior to that which could be provided by the $4,200 in wages and the less than $9,000 in school loans she claims as her income for a year. In short, the Court is not persuaded by [Meleeka's] claims of poverty. Having considered the relative merit of each party's claims the Court finds that as an additional sanction for her contempt and as an exercise of this Court's authority to apportion attorney fees in a dissolution case, [Meleeka] should pay $8,000 of [Michael's] fees incurred herein. . . .

*Id.* at 7.

"The trial court has inherent authority to award attorney fees for civil contempt." *Winslow v. Fifer*, 969 N.E.2d 1087, 1093 (Ind. Ct. App. 2012), *trans. denied*. The fact that the multiple contempt petitions were addressed at a single hearing and in a single order does not preclude the trial court from awarding Michael attorney fees. The trial court clearly took into account Michael's conduct when it crafted its attorney fee award and in fact, ordered him to pay a portion of Meleeka's attorney fees. We cannot conclude the trial court abused its discretion when it ordered Meleeka to pay a portion of Michael's attorney fees.

## IV. *Parenting Time Coordinator*

Meleeka contends the trial court abused its discretion by denying her request to appoint a parenting time coordinator. Decisions about parenting time which requires us to give foremost consideration to the best interests of the child and are reviewed for an abuse of discretion. *Perkinson*, 989 N.E.2d at 761. Although Meleeka directs our attention to evidence that she and Michael did not get along, this fact alone is insufficient to establish that the trial court denied abused its discretion in denying her request for the appointment of a parenting time coordinator. It was well within the trial court's discretion to directly address the issues raised by the parties in an effort to reduce future litigation instead of appointing a parenting time coordinator. Meleeka has not established reversible error on this ground.

# Conclusion

Meleeka has not established that the trial court abused its discretion by modifying her parenting time, by imputing income to her, by finding her in contempt and requiring her to pay a portion of Michael's attorney fees, or by denying her request to appoint a parenting time coordinator. We affirm.

Affirmed.

May, J., and Pyle, J., concur.