# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 29 2016, 5:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Konrad M. L. Urberg
Jared P. Baker
Urberg Law Office, LLC
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Perry D. Shilts
Shilts & Setlak, LLC
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William R. Johnson,

*Appellant-Respondent,*

v.

Tonya S. Johnson,

*Appellee-Petitioner.*

March 29, 2016

Court of Appeals Case No.
90A02-1508-DR-1259

Appeal from the Wells Superior Court

The Honorable Chad E. Kukelhan, Special Judge

Trial Court Cause No.
90D01-0708-DR-51

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Respondent, William R. Johnson (Father), appeals the trial court's denial of his motion to modify a prior Agreed Entry entered into with Appellee-Petitioner, Tonya S. Johnson (Mother), regarding parenting time.

We affirm.

## ISSUE

Father raises one issue on appeal, which we restate as: Whether the trial court erred in deviating from the Indiana Parenting Time Guidelines (Guidelines) by concluding that Father's wife may not act as a primary caregiver.

## FACTS AND PROCEDURAL HISTORY

On August 29, 2007, Mother filed a petition to dissolve her marriage to Father. The marriage produced four children, two of whom are emancipated. On January 30, 2009, Father and Mother reached a Marital Settlement Agreement. A decree of dissolution was entered the same day. Pursuant to the Marital Settlement Agreement, Mother received custody of the parties' two minor children (Children), and Father received "the right to visit said minor [C]hildren at all reasonable times and places so long as said [parenting time] do[es] not interfere with the health or education of the [C]hildren." (Appellant's App. p. 14). The parties agreed to refer to the Guidelines in the event of any disagreements.

Following the Marital Settlement Agreement, a number of disputes arose between the parties. Relevant to this appeal were multiple verbal altercations between Mother and Father's then-girlfriend, Patti Clark (Stepmother),[1] some of which occurred in the presence of the Children. There were also confrontations involving Stepmother and the parties' two emancipated children. On August 19, 2014, the parties filed an Agreed Entry in an effort to resolve their issues. The Agreed Entry provided, in pertinent part, "that [Stepmother] may transport the minor [C]hildren at all times including during opportunities for additional parenting time. The parties also understand and agree that [Stepmother] shall not be the primary caregiver for the minor [C]hildren during the opportunities for additional parenting time." (Appellant's App. p. 28).

On May 18, 2015, Father filed a Verified Petition to Modify Parenting Time and Prior Agreed Entry. In part, Father claimed that because he married Stepmother following the Agreed Entry, Stepmother "should be considered a responsible household member and ought to be allowed to provide caretaking responsibilities for the minor [C]hildren." (Appellant's App. p. 23). On July 1, 2015, the trial court conducted a hearing, and on July 29, 2015, it issued its Findings of Fact and Conclusions of Law. The trial court concluded "that [Stepmother] may only transport the minor [C]hildren for parenting time.

---

[1] On November 8, 2014, Father and Stepmother were married.

[Stepmother] shall not be the primary caregiver for the minor [C]hildren."
(Appellant's App. p. 19).

Father now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Father claims that the trial court erred by concluding that Stepmother may not act as a primary caregiver for the Children based on her status as a "household family member." Ind. Parenting Time Guideline I(C)(3). Here, the trial court entered *sua sponte* findings of fact and conclusions thereon. Thus, "the specific factual findings control only the issues that they cover, and a general judgment standard applies to issues upon which there are no findings." *Clary-Ghosh v. Ghosh*, 26 N.E.3d 986, 990 (Ind. Ct. App. 2015), *reh'g denied*; *trans. denied*. We may affirm a general judgment on any legal theory supported by the evidence. *Id.* On review, we must consider whether the evidence supports the trial court's findings and whether those findings support the judgment. *Id.* "We will disregard a finding only if it is clearly erroneous, which means the record contains no facts to support it either directly or by inference." *Id.* We will find the judgment to be clearly erroneous if it relies on an incorrect legal standard. *Id.*

In addition, in matters of family law, our court generally gives "considerable deference to the findings of the trial court . . . as a reflection that 'the trial judge is in the best position to judge the facts, . . . to get a sense of the parents and their relationship with their children—the kind of qualities that appellate courts

would be in a difficult position to assess.'" *Shelton v. Shelton*, 835 N.E.2d 513, 516 (Ind. Ct. App. 2005) (second alteration in original) (quoting *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005)), *aff'd*, 840 N.E.2d 835 (Ind. 2006). Thus, we do not reweigh evidence or assess the credibility of witnesses, and "we must consider only the evidence most favorable to the judgment along with all reasonable inferences drawn in favor of the judgment." *Clary-Ghosh*, 26 N.E.3d at 990. While we accord "substantial weight . . . to the trial court's factual conclusions and credibility determinations, 'to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result.'" *Shelton*, 835 N.E.2d at 516 (quoting *MacLafferty*, 829 N.E.2d at 941).

[10] Indiana's legislature and supreme court "have promulgated a series of statutes, rules, and guidelines—standards that bring consistency and predictability to the many family law decisions." *Id.* (quoting *MacLafferty*, 829 N.E.2d at 941). The Guidelines are included among these standards. *Id.* To the extent that we must interpret the Guidelines' language, we conduct a *de novo* review, without deference to the trial court's legal conclusions. *Id.*

[11] The Guidelines "are based on the premise that it is usually in a child's best interest to have frequent, meaningful and continuing contact with each parent." Parenting Time G. pmbl. The Guidelines anticipate that parents "should be flexible and create a parenting time agreement which addresses the unique needs of the child and their circumstances." Parenting Time G. pmbl. In the event that parents cannot reach a mutual parenting time arrangement, the

Guidelines "represent the minimum time a parent should have to maintain frequent, meaningful, and continuing contact with a child." Parenting Time G. pmbl. In addition, "[p]arents should recognize there will be occasions when modification of the existing parenting schedule will be necessary." Parenting Time G. I(C). Accordingly, the Guidelines provide:

> **Opportunity for Additional Parenting Time.** When it becomes necessary that a child be cared for by a person other than a parent or a responsible household family member, the parent needing the child care shall first offer the other parent the opportunity for additional parenting time, if providing the child care by the other parent is practical considering the time available and the distance between residences. . . .

Parenting Time G. I(C)(3). Often "mistakenly referred to as the 'right of first refusal[,]'" this section more accurately provides "an opportunity to exercise additional parenting time." Parenting Time G. I(C)(3) cmt.

> The rule providing for opportunities for additional parenting time promotes the concept that a child receives greater benefit from being with a parent rather than a child care provider who is not a household family member. *The household family member is defined as an adult person residing in the household, who is related to the child by blood, marriage or adoption.*

Parenting Time G. I(C)(3) cmt. (emphasis added).

[12]  There is a presumption that Guidelines section I(C)(3) "applies in all cases which the [G]uidelines cover; however, the parties or a trial court may, within discretion, determine that a deviation is necessary or appropriate. Any such

deviation must be accompanied by a written explanation." Parenting Time G. I(C)(3) cmt.; *see Shelton v. Shelton*, 840 N.E.2d 835, 835 (Ind. 2006). Here, the trial court found that Father's motion to modify the Agreed Entry was a request to

> implement[] . . . Guidelines [section I(C)(3)] . . . when it becomes necessary that the parties' minor [C]hildren be cared for by a person other than [Father] or a responsible household family member, the parent needing the child care shall first offer the other parent the opportunity for additional parenting time . . . . [Father] is alleging that upon his marriage to [Stepmother], she shall be defined as a responsible household family member.

(Appellant's App. p. 16). The trial court subsequently concluded

> that a deviation [from section I(C)(3) of the Guidelines] is necessary in this case due to the fact that the restriction on [Stepmother] as not being the primary caregiver for the minor [C]hildren was agreed upon by the parties on August 19, 2014. Further, the verbal altercations between [Mother] and [Stepmother] in front of the parties' minor [C]hildren are not in the best interest of the [C]hildren. Therefore, the [c]ourt orders that [Stepmother] may only transport the minor [C]hildren for parenting time. [Stepmother] shall not be the primary caregiver for the minor [C]hildren.

(Appellant's App. p. 19).

[13] Father contends that the trial court's findings do not support its conclusion that Stepmother may transport the Children but is prohibited from acting as a primary caregiver even though she is a "responsible household family member" by virtue of her marriage to Father. (Appellant's Br. p. 9). Specifically, Father

argues that "[e]ven when it is assumed that there is a history of verbal altercations between [Mother] and [Stepmother], that those verbal altercations negatively impact the minor [C]hildren's best interests, and reasonably infer that future verbal altercations will occur and will negatively impact the minor [C]hildren's best interests," these altercations would only occur during the exchanges of the Children between the parents, which the trial court has permitted Stepmother to do, but would not occur while Stepmother is providing primary care for the Children.

[14] On the other hand, Mother asserts, in part, that the trial court properly concluded that Stepmother may not act as the Children's caregiver because the parties' prior Agreed Entry was entered into in order to protect the best interests of the Children. Specifically, Mother analogizes Father's request to modify the parenting time arrangement to "a vicious dog scenario":

> Once a dog has this label [as a vicious dog], the owner must take precautions to protect the public in order to avoid the dog being euthanized for safety reasons. Father's changing the dog's name from Rover to Mrs. Rover less than three months after he agreed to specific safety precautions does not eliminate the need for those precautions going forward in time absent some other demonstrable proof the dog is no longer a risk to the public.

(Appellee's Br. p. 11). Applying this scenario to the present case, Mother argues that

> Father agreed to reasonable safety precautions for his children's best interests on August 19, 2014. Father changed [Stepmother's] name and legal status by marrying her on

November 8, 2014, but presented no demonstrable proof that the reasons which led to the Agreed Entry of August 19, 2014[,] had been addressed such that those agreed upon and reasonable safety precautions could be removed and were in his [C]hildren's best interests.

(Appellee's Br. p. 11).

[15] We first note that Mother's comparison of Stepmother to a "vicious dog" at risk of being euthanized is certainly not conducive to developing a more cooperative co-parenting relationship for the sake of the Children. (Appellee's Br. p. 11). In addition, we find that Mother's argument is patently offensive. Nevertheless, notwithstanding the trial court's conclusion or the parties' arguments, our court has previously determined that "the rationale of section I(C)(3)" is that "the parent *without physical custody* is given the opportunity for additional parenting time when the custodial parent is regularly unavailable." *Shelton*, 835 N.E.2d at 517 (emphasis added). "The practical outgrowth of this . . . is that the best interests of the child are also served by extending the parental childcare preference to responsible family members *within the custodial parent's household*, also the child's household." *Id.* (emphasis added).

[16] The definition of "household family member" under Guidelines section I(C)(3) is "limited to a person within the same household as the parent with physical custody." *Id.* Therefore, "when the parent with physical custody or a responsible member of that parent's household cannot care for the child, the noncustodial parent is to be offered [additional parenting time] regardless of whether a non-household family member can care for the child without cost."

*Id.* at 517-18. In this case, as the non-custodial parent, it is Father who is entitled to additional parenting time when Mother or one of her responsible household family members is unavailable. Accordingly, the definition of a "household family member" does not apply to Stepmother because she lives with the non-custodial parent—*i.e.*, Father. As such, we need not address whether the trial court erred in concluding that a deviation from Guidelines section I(C)(3) was necessary.

## CONCLUSION

[17] Based on the foregoing, we conclude that Stepmother is not a "household family member" as contemplated by section I(C)(3) of the Guidelines. Accordingly, we affirm the trial court's denial of Father's motion to modify the Agreed Entry to identify Stepmother as such.

[18] Affirmed.

[19] Najam, J. and May, J. concur