FILED

Feb 12 2024, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Dan J. May
Kokomo, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Paternity of A.G., T.J., Jr., and A.J. | February 12, 2024 |
| Chelsea Graham, | Court of Appeals Case No. 23A-JP-1777 |
| *Appellant-Petitioner,* | Appeal from the Howard Circuit Court |
| v. | The Honorable Lynn Murray, Judge |
| Timothy Johnson, Jr., | Trial Court Cause No. 34C01-2108-JP-108 |
| *Appellee-Respondent.* | |

**Opinion by Judge Riley**
Judges Crone and Mathias concur.

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Chelsea Graham (Mother), appeals the trial court's calculation of current child support and child support arrearage, following an agreed entry of paternity against Appellee-Respondent, Timothy Johnson, Jr. (Father).

We reverse and remand for further proceedings.

## ISSUES

Mother presents this court with four issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the trial court abused its discretion when calculating the credit awarded to Father for overnight stays; and

(2) Whether the trial court abused its discretion by not calculating Father's retroactive accrued child support obligation.

## FACTS AND PROCEDURAL HISTORY

Mother and Father are the biological parents of three minor children born out of wedlock, A.G., born December 13, 2011; T.J. III, born March 31, 2015; and A.J., born February 27, 2017 (collectively, Children). On August 11, 2021, Mother filed a verified petition for the establishment of paternity, custody, child support, and parenting time. On September 10, 2021, after Mother filed an emergency motion with the trial court due to Father's refusal to return Children to her custody after his summer parenting time, the trial court established

Father's paternity of Children by affidavit and granted Mother sole custody. On August 22, 2022, the trial court entered a preliminary support and custody order by agreement of the parties, which established temporary primary physical custody of Children with Mother and joint legal custody. Father was granted parenting time pursuant to the Indiana Parenting Time Guidelines and was ordered to pay $131 per week in child support.

[5] After multiple continuances, on April 24, 2023, Father's counsel initiated negotiations with Mother by sending a proposed agreement which called for joint custody of Children, no child support obligation, and waived all accrued child support arrears. At the behest of her counsel, Mother filed a motion for rule to show cause, alleging that "[a]ny agreement to waive support is fraud upon the court and [C]hildren[;]" Father had not made any child support payments since October 17, 2022; and Father's arrearage as of April 24, 2023 amounted to approximately $10,581. (Appellant's App. Vol. II, p. 39). On May 16, 2023, the parties filed a final agreed entry on paternity, custody, parenting time, and child support. The agreed entry specified that Mother and Father shall share joint physical and legal custody of Children, with Mother having custody during the school year and Father having custody during all school breaks. Holiday parenting time shall be exercised in accordance with the Indiana Parenting Time Guidelines, unless the parties otherwise agreed. The agreed entry reserved the issue of child support and arrears to be determined by the trial court.

On June 21, 2023, the trial court conducted a hearing on the issues of child support, child support arrears, and retroactivity of support. On July 3, 2023, the trial court entered its Order, concluding, in pertinent part:

> The parents agree between themselves that neither parent would be ordered to pay to the other parent any child support, as the parents prefer that the financial arrangements for the support of their [C]hildren as between them would be voluntary and not court ordered.
>
> Indiana law requires that parents have a legal obligation to financially support their children. When children are within the jurisdiction of the court, the court must determine the parents' respective support obligations. The parents cannot contract away the support obligation which is a benefit for the children.
>
> * * * *
>
> Here, the court finds that the Guideline amount for child support should be calculated based upon the following findings: [F]ather earns weekly gross income of $640.00 per week; [M]other has imputed weekly gross income of $290.00 per week; [F]ather pays $75.00 per week support for a prior born child; neither parent pays child care or a premium for the [C]hildren's health insurance; and [F]ather would have the right of 181 overnights of parenting time per year.
>
> * * * *
>
> The court finds that the child support obligation in this case should deviate from the Guideline amount to reflect that the parents will equally share the [C]hildren's controlled expenses.

> The court further finds that [F]ather should pay [M]other weekly child support in the amount of $61.00 per week retroactive to May 16, 2023. This obligation supersedes the child support obligation of the Preliminary Agreed Order which was a provisional order.
>
> The court reserves the issue of past-due child support arrearages owed by [F]ather.

(Appellant's App. Vol. II, pp. 15-17) (internal citations omitted).

Mother now appeals. Additional facts will be provided if necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

As an initial matter, we observe that Father has not filed an appellee's brief. In such cases, we need not undertake the burden of developing an argument for the appellee, and we will reverse the judgment if the appellant presents a case of *prima facie* error, that is "at first sight, on first appearance, or on the face of it." *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006) (quoting *Santana v. Santana*, 708 N.E.2d 886, 887 (Ind. Ct. App. 1999)).

In addition, it appears that the trial court entered *sua sponte* findings. In such a situation, the specific factual findings control only the issues that they cover, and a general judgment standard applies to issues upon which there are no findings. *Clary-Ghosh v. Ghosh*, 26 N.E.3d 986, 990 (Ind. Ct. App. 2015), *trans. denied*. It is not necessary that each and every finding be correct, and even if

one or more findings are clearly erroneous, we may affirm the judgment if it is supported by other findings or is otherwise supported by the record. *Id.* We may affirm a general judgment with *sua sponte* findings on any legal theory supported by the evidence. *Id.* In reviewing the accuracy of findings, we first consider whether the evidence supports them. *Id.* We then consider whether the findings support the judgment. *Id.* We will disregard a finding only if it is clearly erroneous, which means the record contains no facts to support it either directly or by inference. *Id.*

## II. *Child Support*

[10] "A trial court's calculation of child support is presumptively valid." *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008). Mother now contends that the trial court erred in calculating Father's credit for overnight stays when determining his child support obligation. Pursuant to the Indiana Child Support Rules and Guidelines, "[a] credit should be awarded for the number of overnights each year that the child(ren) spend with the noncustodial parent." Ind. Child Support Guideline 6. The trial court is "not required to award parenting time credit based on overnights" because an overnight does not always shift the financial burden. *Bogner v. Bogner*, 29 N.E.3d 733, 743 (Ind. 2015).

[11] Here, based on the parties' joint physical custody of Children, with Mother having custody during the school year and Father having custody on all school breaks, the trial court awarded Father a credit for 181 overnight stays. However, at the hearing, a different reality emerged. When questioned about

Father's overnight visits with Children, Mother admitted that she never agreed to awarding him "182 overnights a year." (Transcript p. 26). Further questioning revealed that Father would get the Children "about [forty-five] days." (Tr. p. 26). In his testimony, Father calculated that he had already had the Children for fifteen nights in 2023 and was expected to host the Children another thirty-four to thirty-five overnight visits. Flexible standards allow trial courts to "fashion child support orders that are tailored to the circumstances of the particular case[.]" *Johnson v. Johnson*, 999 N.E.2d 56, 60 (Ind. 2013). Further, our supreme court, citing with approval a trial court's finding that "extra time the noncustodial parent spends with the child should not be for the purpose of reducing that parent's support obligations [but] for the benefit of everyone[,]" has stated that it "does not believe that exercising additional overnights should be used as a bargaining tool for parents to decrease their child support obligations." *Bogner*, 29 N.E.3d at 744. Accordingly, as the evidence does not support the trial court's credit of 181 overnight visits and in the absence of any reasoned conclusion for this deviation by the trial court, we reverse the trial court and remand for recalculation of Father's child support obligation in light of a revised credit for overnight visits. *See Young*, 891 N.E.2d at 1048 ("the number of visits a noncustodial parent receiving parenting time gets credit for cannot exceed the number of visits in which the children physically stay overnight with the parent").

III. *Retroactive Child Support Obligation*

[12] The record is rife with references that Mother and Father wished to abate or completely waive Father's child support arrearage. Father presented Mother with a proposed final agreement—and requested the trial court—to waive all child support obligations and accrued arrearages. Mother testified that she would rather have the arrearage "waived and him be able to spend more time with my [C]hildren than working more to pay that money back and missing time with my kids." (Tr. p. 28).

[13] As emphasized by Mother's counsel, custodial parents who receive child support are treated as trustees of the payments for the use and the benefit of the child. *Straub v. B.M.T.*, 645 N.E.2d 597, 599-600 (Ind. 1994). Neither parent has the right to contract away these support benefits. *Id.* The right to the support lies exclusively with the child. *Id.* Any agreement purporting to contract away these rights is directly contrary to this State's public policy of protecting the welfare of children, as it narrows the basis for support to one parent. *Id.*

[14] Indiana case law has long prohibited the retroactive reduction or elimination of child support obligations once those obligations have accrued. In *Whited*, our supreme court affirmed the long-standing rule that, in general, "after support obligations have accrued, a court may not retroactively reduce or eliminate such obligations." *Whited v. Whited*, 859 N.E.2d 657, 661 (Ind. 2007). Retroactive modifications of child support obligations have been statutorily prohibited since at least 1987. *Id.*; *see also* Ind. Code § 31-16-16-6. This is a "bright-line rule" subject to the following two narrow exceptions:

> (1) the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the decree, or
>
> (2) the obligated parent takes the child into his or her home, assumes custody, provides necessities, and exercises parental control for such a period of time that a permanent change of custody is exercised.

*Id*. at 662. Neither of the two exceptions identified by *Whited* are applicable here.

[15] As for the first exception, our supreme court explained that the standard for alternative arrangements that substantially comply with the spirit of the original decree is rigorous. Thus, "[c]redit for non-conforming payments is recognized when parents informally agree to change the form of payment (*e.g.*, payment directly to the parent as opposed to through the clerk's office), so long as the amount of payment can be verified and there is no reduction of amount." *Id.* Here, the record reflects that Father only made approximately $1,328 in child support payments since August 11, 2021, and has made a $250 payment since the trial court's Order. Both parents testified that Father made a $500 payment through CashApp, but neither parent could submit any receipt for the payment. In addition, testimony reflects that Father attempted to make another $2,000 payment, which Mother did not receive. With respect to the second *Whited* exception, there is no evidence that Children no longer reside with Mother.

Even though the trial court in its Order notified that it had "reserve[d] the issue of past-due child support arrearages owed by [F]ather," there is no indication in the record as to the reason for this reservation, as the trial court had received testimony and evidence with respect to Father's accrued arrearage during the hearing. (Appellant's App. Vol. II, p. 17). Accordingly, as we remand this cause to the trial court for recalculation of Father's child support obligation, we also remand for calculation of Father's accrued child support arrearage retroactive to the date of the filing of the paternity action on August 11, 2021. See I.C. § 31-14-11-5 ("The support order: (1) may include the period dating from the birth of the child; and (2) must include the period dating from the filing of the paternity action").

## CONCLUSION

Based on the foregoing, we conclude that the trial court abused its discretion when calculating the credit awarded to Father for overnight stays. We reverse the trial court's child support order and remand for recalculation of Father's child support obligation and calculation of his accrued child support arrearage in accordance with this opinion.

Reversed and remanded.

Crone, J. and Mathias, J. concur