**Robert G. RIEHLE, Appellant–Defendant,**

v.

**Larry K. MOORE and Patsy R. Moore, Appellees–Plaintiffs.**

No. 79A05–9105–CV–146.

Court of Appeals of Indiana, Fifth District.

Oct. 20, 1992.

Transfer Denied Dec. 14, 1992.

Richard T. Heide, Heide Sandy Deets Kennedy Schrader & Antalis, Lafayette, for appellant-defendant.

John J. Fuhs, Petri & Fuhs, Spencer, for appellees-plaintiffs.

SHARPNACK, Chief Judge.

Defendant Robert Riehle appeals the adverse judgment of the Tippecanoe Circuit Court which awarded compensatory damages of $11,158.23 to plaintiffs Larry and Patsy Moore. We affirm in part and reverse in part.

On appeal, Riehle raises six issues, which we have consolidated and restated as follows:

1. Did the trial court commit reversible error when it included within its findings of fact two which were not supported by evidence in the record?

2. Did the trial court properly admit into evidence the Moores' exhibit 1?

3. Was Riehle entitled to a reduction in the amount of damages owed because the Moores reached a settlement with an alleged joint tort-feasor?

4. Were the trial court's findings on the issues of liability and damages supported by sufficient evidence?

5. Did the trial court award the Moores types of damages to which they were not legally entitled?

The following are the facts most favorable to the judgment. The Moores lived in Spencer. In 1980, Larry Moore learned that his job would require him to move to Lafayette. Around Thanksgiving, Larry discussed with Riehle the Moores' desire to buy a house in the Lafayette area. Riehle told Larry of a house that Riehle believed might interest the Moores. The Moores viewed the house in early December of 1980.

After the Moores viewed the house, Larry Moore spoke with attorney John Fuhs. Fuhs advised Larry to make sure that there was title insurance on the property. After this conversation, Larry Moore continued negotiations with Riehle. During these negotiations, Larry asked Riehle about title insurance. Riehle responded that there would be no problem with insurance.

On December 22, the Moores had another meeting with Riehle. At this meeting, they again requested title insurance. Riehle assured them that he would provide title insurance and told them that they should go forward and bid on the house. The Moores bid on the house, and negotiations between the parties culminated in a final purchase agreement which identified James Bailey as the Moores' agent and which was admitted into evidence at trial as plaintiffs' exhibit 2.[1] An earlier version of the purchase agreement, which was admitted into evidence as plaintiffs' exhibit 1, identified Riehle as the Moores' agent. The purchase agreement provided that the Moores would buy the property on a land sale contract for a price of $41,000.00, with a down payment of $14,000.00 and monthly payments of $324.05 for a period of 15 years. The agreement also provided that the seller was

1. Bailey was a broker and Riehle a salesman    doing business as "Hoot Grieves Realty".

to provide evidence of title to the Moores before the closing.

Some time before the closing, the Moores asked Riehle if they should have an attorney present at the closing. Riehle told them that retaining an attorney would be a waste of money because Riehle would take care of everything necessary to make the sale legal.

When the Moores sold their house in Spencer, they contacted Riehle and informed him that they had sold the house. They also requested that Riehle set a closing date and obtain the title insurance. Riehle told them that they would be supplied with the insurance before the closing date which was set for May 21, 1981.

Riehle and the Moores had additional discussions before the closing date. During these discussions, the Moores repeated their request to be supplied with title insurance.

On the day of closing, Larry Moore repeated the request to be shown the title insurance and stated that his attorney had told him that it was important that he see the insurance before closing on the house. Riehle told Larry that the insurance policy had not been completely typed up yet, but that Riehle had seen the insurance and that title was free and clear. Riehle also told Larry that the insurance would be ready the next day. The Moores did not actually receive a copy of the title insurance until March of 1985.

The Moores took possession of the house and kept up with the monthly payments to the seller until March of 1985. That month, the Moores received a letter from an attorney representing the Lafayette Bank & Trust Co. informing them that the seller was in default on a loan secured by a mortgage on their house. The letter also stated that they were named defendants in an action which the bank had filed to foreclose the mortgage.

The Moores retained counsel to defend their interest in the house. However, when it became clear that the mortgage was superior to their interest, the Moores entered into an agreed summary judgment under which the court foreclosed the mortgage. The Moores were forced to buy back their home at the sheriff's sale for a price of $34,750.00 at a time when they would have owed approximately $28,000.00 under the land sale contract. In order to finance this repurchase, the Moores secured a loan from Purdue National Bank. They incurred various expenses in securing this loan.

Riehle first challenges two of the trial court's findings of fact. The first of the challenged findings, finding number four, states:

"That a copy of the listing agreement [between the seller and Hoot Grieves Realty] was admitted into evidence at the trial and was in full force and effect at all relevant times herein."

The court's finding number thirty-five states:

"That the real estate listing contract between [the seller] and Grieves Real Estate did not identify any mortgage even though there was a blank on the listing contract concerning the existence of a mortgage."

Riehle asserts that these findings are erroneous because the listing agreement was excluded from evidence at trial pursuant to his objection. He further asserts that these erroneous findings are sufficient grounds for reversal.

When we review a trial court's judgment based upon findings of fact and conclusions of law, we will reverse only if the findings and conclusions drawn therefrom are clearly erroneous. A judgment is clearly erroneous when it is unsupported by the findings and conclusions. Findings of fact are clearly erroneous if the record fails to disclose any facts in evidence or any reasonable inferences from the evidence in support of the findings. *Donavan v. Ivy Knoll Apartments* (1989), Ind.App., 537 N.E.2d 47, 50. We do not reweigh the evidence, and we will affirm the trial court unless the evidence, when viewed in a light most favorable to the judgment, points uncontrovertibly to an opposite conclusion. *Donavan*, 537 N.E.2d at 50–51.

■ When it makes special findings of fact, the trial court need not recite the evidence in detail, but must only make findings as to those ultimate facts necessary to support the judgment. *Salk v. Weinraub* (1979), 271 Ind. 115, 118, 390 N.E.2d 995, 997–998. It is true that this court is to disregard any special finding that is based on facts not proper or competent to be considered, and it is also true that such a finding cannot form the basis for a conclusion of law. *Gentry v. Gentry* (en Banc 1953), 123 Ind.App. 270, 275, 110 N.E.2d 509, 511. However, we may reverse a trial court's judgment only if its findings constitute prejudicial error. *Vorhees–Jontz Lumber Co. v. Bezek* (1965), 137 Ind.App. 382, 389, 209 N.E.2d 380, 383–384. A finding of fact is not prejudicial to a party unless it directly supports a conclusion of law adverse to him. *Id.; Baker v. Johnson* (1923), 79 Ind.App. 413, 418, 138 N.E. 780, 782.

■ In this case, the trial court's special findings four and thirty-five were clearly erroneous because they were not based on evidence admitted at trial. Because they are clearly in error, findings four and thirty-five would be cause for reversal if they were the sole support for any conclusion of law necessary to sustain the judgment of the court. After examining the entire judgment, however, we have determined that the erroneous findings do not constitute the sole support for any conclusion of law necessary to the judgment.

The Moores' complaint alleged the classic elements of fraud: 1) that Riehle made a misrepresentation of past or existing fact; 2) that was false; 3) that Riehle knew to be false; 4) that the Moores relied on the misrepresentation; and 5) that they suffered harm because of the misrepresentation. *Scott v. Bodor, Inc.* (1991), Ind.App., 571 N.E.2d 313, 319; *Captain & Co. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88, 96. In order to find in their favor, the trial court was required to find facts sufficient to support each of these elements. In this case, the disputed findings could only be relevant to the elements of falsity and knowledge of falsity; certainly the existence and contents of the listing agreement between Grieves Realty and the seller has no bearing on whether Riehle made any misrepresentations of past or existing fact, whether the Moores relied on the misrepresentations, or whether they were harmed by the misrepresentations. Thus, the fact that the court made the erroneous findings does not affect these elements in any way.

■ Disregarding the erroneous findings, we find that the remainder of the trial court's findings, which were supported by evidence on the record, provided ample support for the two remaining elements necessary to sustain the fraud judgment. The elements of falsity and knowledge were supported by the court's findings numbered twenty-seven, thirty, thirty-one, and thirty-six which in essence found that there was a mortgage on the property, that Riehle knew of the mortgage because he helped the seller obtain the loan secured by the mortgage, but that Riehle told the Moores that the property was free and clear of title problems. Because there is evidence sufficient to support the trial court's ultimate findings on the elements necessary to sustain the judgment, we hold that the erroneous findings were merely harmless surplusage which did not prejudice Riehle and which therefore are not grounds for reversal.

■ Riehle next argues that, for two distinct reasons, the trial court erred in admitting into evidence the Moores' exhibit 1, an unsigned purchase agreement. First, he complains that the court should not have admitted the agreement because it was not listed in the Moores' tendered list of witnesses and exhibits. He further asserts that the court should not have admitted the agreement because it did not comply with the statute of frauds.[2]

2. The listing agreement or the two purchase agreements could conceivably have been relevant to the question of whom Riehle represented. This question, however, is not one that is material to the Moores' right to recover for fraud, because the Moores could recover on a theory of fraud if Riehle was their agent, *Smith v. Fiscus* (1916), 62 Ind.App. 156, 159, 111 N.E. 203, 204, or if he was the seller's agent. *Tolliver v. Mathas* (1989), Ind.App., 538 N.E.2d 971, 977;

■ The trial court did not err in admitting the agreement into evidence. The question of whether particular witnesses or exhibits should be excluded from evidence because they have not been included in a pre-trial order or list of witnesses and exhibits is committed to the discretion of the trial court. *See Plohg v. NN Investors Life Insurance Co.* (1992), Ind.App., 583 N.E.2d 1233, 1238–1239. In reviewing a trial court's ruling in such a case we must remember that, "The law provides no official 'right' answer; rather it affords the [trial] judge latitude, and our appellate second-sight will not reverse unless we are persuaded that the [trial] judge's decision was clearly against the logic and effect of the circumstances before the court." *Plohg*, 583 N.E.2d at 1238.

■ Here, the trial court's decision to admit the agreement was not clearly against the logic and effect of the circumstances. It is true that the Moores did not include the agreement in their pretrial list of witnesses and exhibits. It is also true that, when the Moores attempted to place the agreement into evidence on the first day of trial, December 6, 1989, the trial court sustained Riehle's objection. However, when it became apparent that the trial would take more than one day and that the trial would not continue until a substantial period of time had passed, the trial court indicated that it would not sustain any further objection based on the failure to include an exhibit in the pre-trial list. When the trial resumed on September 28, 1990, the Moores again offered the unsigned agreement into evidence. Riehle restated his objection based on the failure to include the agreement on the list of witnesses and exhibits. This time, the trial court overruled the objection and admitted the agreement. The court did not abuse its discretion because Riehle knew of the agreement and had ample time to prepare for it. There is no reason to reverse the trial court on this ground.

■ Riehle next argues that the trial court should have excluded the agreement because it was an unexecuted document

*Howard Dodge and Sons, Inc. v. Finn* (1979), 181

concerning the sale of land and thus violated the statute of frauds. The trial court did not err because there is no statute of frauds issue here. The statute provides:

"No action shall be brought in any of the following cases:

\* \* \* \* \* \*

Fourth. Upon any contract for the sale of lands;

\* \* \* \* \* \*

Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, excepting however, leases not exceeding the term of three (3) years."

Ind.Code § 32–2–1–1. Riehle cannot rely on the statute for two reasons: this action is not an action upon the purchase agreement and, even if it were, Riehle is neither a party to the agreement nor the privy of a party to the agreement.

In the only subsection relevant to Riehle's argument, the statute explicitly provides that no action shall be brought on a contract for the sale of land unless the contract was reduced to writing. In this case, however, the Moores did not seek to enforce any right under the purchase agreement between themselves and the seller. Instead, they sought damages for fraud based on certain misrepresentations that Riehle made concerning the status of title to the land. Because this was not an action to vindicate any right generated by the contract, it was not an action "upon" the contract and thus falls outside the effect of the statute of frauds.

There is yet another reason that the statute does not govern in this case. Our courts have held that only the parties to a contract or their privies may rely on the statute of frauds. *Blue Valley Turf Farms v. Realestate Marketing and Development, Inc.* (1981), Ind.App., 424 N.E.2d 1088, 1090. It cannot be disputed that Riehle was not a party to the purchase

Ind.App. 209, 212, 391 N.E.2d 638, 641.

agreement. Furthermore, Riehle was not a privy to any party to the contract. A privy is "[a] person in privity with another." Black's Law Dictionary 1200 (6th ed. 1990). Privity has been defined as "mutual or successive relationships to the *same right* of property, or an identification of interest of one person with another as to represent the *same legal right.*" Black's Law Dictionary at 1199 (emphasis added). Riehle has no successive or mutual relationship with any party in regard to any right created by the purchase agreement, and he has no identification of interest with any party. His interest in this transaction was limited to earning a commission by bringing the parties to the sale together. He was thus not a privy and the court properly refused his attempt to assert the statute of frauds.

Riehle next argues that the trial court should have given him a credit against the damages assessed in this action for a twenty thousand dollar claim which the federal bankruptcy court approved pursuant to the agreement of the debtor and the Moores in the bankruptcy of James Bailey, the other Hoot Grieves realtor involved in this transaction.[3] We reject this argument, however, because Riehle has failed to meet his burden of proof on the amount of the credit to which he might have been entitled.

■ Normally, where the actions of multiple defendants cause a single injury to a plaintiff, a defendant against whom judgment is rendered at trial is entitled to credit against the assessed damages in the amount of any funds received from any settling joint tort-feasor by the plaintiff. *Manns v. Department of Highways* (1989), Ind., 541 N.E.2d 929, 933; *Sanders v. Cole Municipal Finance* (1986), Ind.App., 489 N.E.2d 117, 123. This credit is allowed in order to prevent a plaintiff from recovering twice for the same injury. *Manns,* 541 N.E.2d at 933; *Barker v. Cole* (1979), Ind. App., 396 N.E.2d 964, 970, 16 A.L.R.4th 223, 233. Because the credit is in the nature of an affirmative defense on the issue of damages, the defendant who seeks to take advantage of this credit bears the burden of proving the amount of the credit to which he is entitled. *See Sanders,* 489 N.E.2d at 121–122; Ind. Trial Rule 8.

■ Here, in an attempt to claim a twenty thousand dollar credit, Riehle relies on certain representations made by the Moores' counsel at trial. In responding to the suggestion by Riehle's counsel that Bailey's bankruptcy might pose an impediment to going forward with the trial of the Moores' claim against Riehle, the Moores' attorney stated that the bankruptcy court had allowed the Moores' claim against Bailey in the amount of twenty thousand dollars. He also stated that Bailey was making some nominal monthly payments on the Moore claim, but that Bailey was laboring under a substantial federal tax lien. Riehle resisted the Moores' attempt to testify as to the amount actually received from Bailey, and the trial court refused to receive evidence on this point. Because there was no evidence on the amount the Moores' actually received, there is nothing indicating that they received a double recovery, and, accordingly, there was insufficient evidence to support a credit here. The trial court did not err.

Next we have consolidated two of Riehle's issues into the single issue of whether the trial court's judgment on the question of liability was supported by sufficient evidence. In particular, Riehle argues that there was insufficient evidence to prove that he engaged in the unlawful practice of law and to prove that Riehle told the Moores that the property was free and clear.

As we noted above, we neither reweigh the evidence nor judge the credibility of the witnesses when we review the judgment of the trial court. *Donavan,* 537 N.E.2d at 50–51. Here both Larry and Patsy Moore testified that, in response to their request to be shown the title insurance at the closing, Riehle told them that he had seen the insurance and that the title to the property was free and clear. (Record, pp. 139, 250–251). This court has previously found that

---

**3.** Bailey originally was a codefendant in this case. The proceedings against him were stayed by operation of the bankruptcy code.

such representations by the seller of a piece of property can constitute actionable fraud. *See, e.g., Groves v. First National Bank* (1988), Ind.App., 518 N.E.2d 819. The evidence is thus sufficient to support the trial court's finding of fraud, and we will not attempt to reweigh the evidence merely because Riehle believes the trial court incorrectly struck the balance at trial.[4]

Finally, Riehle challenges the trial court's judgment because it awarded the Moores damages for Larry Moore's lost wages and for long distance phone calls to their attorney. We agree that, under the circumstances of this case, such damages were not authorized, and we reverse that part of the damage award which represents lost wages and long distance phone calls.

These expenses were incurred for telephone calls to plaintiffs' attorney and for time lost from work in attendance at court proceedings. The trial court explicitly declined in Finding 51 to award "attorney fees, discovery and travel expenses, and punitive damages," because the proof fell short of the clear and convincing standard. There was also no finding of obdurate behavior which could have supported a recovery of attorney fees.

Normally, costs of litigation are not recoverable by a prevailing party in the absence of some express statute providing for reimbursement of such expenses. *State v. Holder* (1973), 260 Ind. 336, 338, 295 N.E.2d 799, 800; *Atwood v. Prairie Village, Inc.* (1980), Ind.App., 401 N.E.2d 97, 101. Allowable costs do not include every conceivable expense of litigation, but "only those usual and ordinary expenses of a trial which are prescribed by statute *to be paid to the court." Holder*, 260 Ind. at 339, 295 N.E.2d at 801. Such costs do not include telephone charges incurred in preparing for a trial. *Id.; see also Johnson v. Naugle* (1990), Ind.App., 557 N.E.2d 1339, 1346. The trial court erred in awarding long distance telephone charges.

The trial court also erred in awarding Larry's lost wages. The value of wages lost due to the prosecution of a lawsuit is not compensable under Indiana law. *McCormick Piano & Organ Co. v. Geiger* (1980), Ind.App., 412 N.E.2d 842, 853. We therefore reverse this item of the court's damage award.

The Moores argue that the costs should be allowed because Riehle engaged in obdurate behavior. It is true that in certain instances our courts have allowed one party to recover attorney's fees when his adversary has engaged in bad faith or "obdurate behavior." *Cox v. Ubik* (1981), Ind.App., 424 N.E.2d 127, 129. However, the trial court did not award attorney's fees here, and the obdurate behavior exception does not apply to the type of expenses included in the court's judgment.

Even if the exception did apply to these types of expenses in general, we would reverse the award in this case because the exception is appropriate when the offending party has engaged in obdurate behavior in prosecuting or defending the instant litigation, not in committing the acts which are the subject of the litigation. *Swain v. Swain* (1991), Ind.App., 576 N.E.2d 1281, 1285. Here, the Moores did not establish that Riehle engaged in obdurate behavior in defending this suit.

We affirm those portions of the trial court's judgment that found Riehle liable for fraud and assessed as damages the costs that the Moores incurred in order to repurchase their house. We reverse those portions of the judgment that awarded as damages the costs of long distance phone calls to the Moores' attorney and the value of the wages that Larry lost due to the prosecution of this suit.

AFFIRMED IN PART, REVERSED IN PART.

RUCKER, J., concurs.

SULLIVAN, J., concurs in result.

finding that Riehle unlawfully engaged in the practice of law.

---

4. Because the evidence is sufficient to sustain the court's judgment on the theory of fraud, we need not address the sufficiency to support a