945 N.E.2d 753 (2011)
In re the Matter of G.B.H:
L.R., Appellant,
v.
N.H. and State of Indiana, Appellees.
No. 68A01-1009-JP-475.
Court of Appeals of Indiana.
March 24, 2011.
*754 Dale W. Arnett, Winchester, IN, for Appellant.
Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, for Appellee.

OPINION
ROBB, Chief Judge.

Case Summary and Issue
L.R. ("Father") appeals the trial court's order finding him in contempt for failure to pay child support. For our review, Father raises a single issue which we restate as whether the evidence supports a finding that his failure to pay child support was willful. Concluding the evidence does not support a finding that Father willfully failed to pay, and therefore the trial court abused its discretion by finding him in contempt, we reverse.

Facts and Procedural History
On January 15, 2009, the State filed a verified petition to establish paternity of G.H., the minor child of mother N.H. On May 1, 2009, the trial court held a hearing on the petition at which Father appeared in person. On May 7, 2009, the trial court issued its order on paternity, support, custody, and parenting time, in which it found Father stipulated to being the biological father of G.H. The trial court ordered Father to pay child support of $35 per week commencing January 23, 2009. A notation by the trial court clerk indicates a copy of the order was mailed to Father on May 11, 2009. On May 13, 2009, the State filed an income withholding order. However, the State did not send the order to Father's correct employer until July 28, 2009. The order as sent on July 28, 2009 directed withholding of $35 per week for current support and $20 per week for past-due support.
From May to November 2009, Father was employed at Tomasco Indiana LLC ("Tomasco"). Father did not make any support payments prior to July 28, 2009. However, once the income withholding started, Father made the following support payments: $46.57 on July 28, 2009; $46.57 on August 11, 2009; $50.07 on August 18, 2009; $43.36 on August 20, 2009; $46.57 on September 9, 2009; $49.34 on September 15, 2009; $38.01 on September 21, 2009; $40.49 on September 29, 2009; $49.73 on October 6, 2009; $46.57 on October 14, 2009; $51.03 on October 20, 2009; $27.67 on October 27, 2009; $49.73 on November 3, 2009; and $43.15 on November 10, 2009.[1]
In a financial status affidavit filed on September 15, 2009,[2] Father affirmed that he was living with his girlfriend with whom he shared a residence rented at $475 per month, that he had a support obligation for four other children totaling $93 per week, and that he had no assets and no income aside from his employment at Tomasco.
On November 17, 2009, Father lost his job at Tomasco for absenteeism, although *755 he later testified that all of his absences were for court appearances. He testified that during his period of unemployment he looked for work at a "whole list of places," a list of forty employers that he admitted into evidence, but "just couldn't find a job." Transcript at 7. Father made cash support payments of $5 on November 13, 2009, $5 on November 20, 2009, $5 on December 18, 2009, and a check payment of $37.11 on December 12, 2009. Father then made cash support payments of $20 on January 19, 2010, $5 on January 28, 2010, $10 on February 12, 2010, and $10 on March 2, 2010.
For approximately two weeks in April 2010, Father was employed by the temp agency Kelly Services. Through that employment he made support payments of $6.18 on April 10 and $113.89 on April 17.
On April 21, 2010, the State filed its verified information for contempt citation.
On June 5, 2010, Father began receiving unemployment benefits of $210 per week. Of that amount, $33.06 per week was withheld and paid toward his support obligation in this case and $79 was withheld toward his support obligation in the other case. The combined $112.06 withheld per week was the maximum withholding (55 percent) permitted by law. Father knew that his support obligation in this case was $35 per week, that his unemployment check was contributing only $33.06 per week, and that there was a "couple dollars" shortfall. Id. at 9. He testified that during this time his girlfriend paid the majority of the bills and they continued to rent their residence for $475 per month. He also testified that during June and July 2010 he did not pay the $2-per-week shortfall because he was unable to find another source of income and needed the less than $100 per week received from his unemployment check to contribute toward rent and other living expenses.
In August 2010, Father began mowing someone's lawn for $15 per week. On August 13, 2010, he started using that money to pay the $2-per-week shortfall and ten or more dollars per week toward his support arrearage. As of August 24, 2010, Father's arrearage in this case was $1,755.70. He was still unemployed, still seeking employment, and still receiving unemployment benefits.
On August 27, 2010, the trial court held a contempt hearing. That same day, it issued its order finding that Father "has had funds available to him to pay child support, but has failed to do so" and therefore was in contempt. Appellant's Appendix at 8. The trial court sentenced Father to thirty days in jail, suspended on the condition that he pay $35 per week in current child support and an additional $15 per week toward his arrearage. Father now appeals.

Discussion and Decision

I. Standard of Review
Whether a person is in contempt of a court order rests within the trial court's discretion, and we review the trial court's finding for an abuse of discretion. Mitchell v. Mitchell, 785 N.E.2d 1194, 1198 (Ind.Ct.App.2003). An abuse of discretion is shown only when the trial court's decision is against the logic and effect of the facts and circumstances before the trial court. Id. We do not reweigh the evidence or judge the credibility of witnesses, and we will affirm the trial court's contempt finding unless review of the record leaves us with a firm and definite belief that a mistake has been made. Emery v. Sautter, 788 N.E.2d 856, 860 (Ind.Ct.App.2003), trans. denied. We have further stated that we will reverse the trial court's contempt finding only if there is no evidence to support it. Williamson v. Creamer, 722 N.E.2d 863, 865 (Ind.Ct.App.2000).

*756 II. Willful Failure to Pay
A child support order is enforceable by contempt only if the parent has the financial ability to pay the support due and his or her failure to pay is willful. Pettit v. Pettit, 626 N.E.2d 444, 447-48 (Ind.1993). In challenging the trial court's finding that he was in contempt, Father concedes that his child support payments were irregular and not current. He argues, however, that his failure to pay was not willful because he paid while employed, thereafter made diligent efforts to find employment, and began to pay again when he started receiving unemployment benefits. We agree.
On May 11, 2009, Father was mailed a copy of the trial court's order requiring him to pay $35 per week in support. Paragraph 6 of the order stated that pursuant to statute, "immediate withholding form [sic] the income of [Father], shall be activated in the payment of such child support." Appellant's App. at 65. On May 13, 2009, the State filed an income withholding order. However, neither the State nor the trial court sent the withholding order to Father's correct employer until July 28, 2009. There is no evidence to suggest that this delay in starting the income withholding was Father's fault. To the contrary, Father testified that he asked Tomasco to withhold support from his paycheck, but "[t]hey didn't take it out. I had told them, but they didn't do it." Tr. at 10. There is also no evidence that Father was advised of his obligation to make support payments on his own until such time as the withholding became effective. Because Father was advised that his support payments had to be by income withholding order, and the record does not show he was advised of his obligation to make payments on his own before the withholding became effective, we cannot conclude that his failure to do so was a willful violation of the support order.
The trial court pointed to the time period in 2010 when Father was receiving unemployment benefits, was paying support in the maximum amount that could by law be withheld from his unemployment check, and did not pay the $2-per-week shortfall between that amount and his $35-per-week obligation. These facts were not sufficient to support a contempt finding given that the uncontroverted evidence showed Father had less than $100 per week upon which to live after withholding for his two cases of court-ordered support and needed the remaining money to contribute toward his rent and living expenses. During that time when he was involuntarily unemployed and had no income aside from unemployment benefits, Father paid what he was able to yet lacked the ability to pay his support obligation in full.

Conclusion
The evidence does not support a finding that Father willfully failed to pay child support, and therefore the trial court abused its discretion by finding him in contempt. The trial court's contempt finding and resulting sanction are therefore reversed.
Reversed.
RILEY, J., and BROWN, J., concur.
NOTES
[1] The record has no direct indication of why these amounts varied both from each other and from the withholding order. We note, however, that a federal statute limits the portion of a person's wages that can be garnished by court order, even for child support. See 15 U.S.C. § 1673(b).
[2] Father filed this affidavit in connection with his request for appointed counsel regarding the State's initial information for contempt, which was filed on August 3, 2009. This information was later dismissed on the State's motion.