## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 30 2016, 7:58 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jill S. Swope
Sterba & Swope,LLP
Schererville, Indiana

ATTORNEYS FOR APPELLEE

Andrew P. Martin
Thomas E. Rucinski
Sachs & Hess, P.C.
St. John, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Janet L. McDaniel, | September 30, 2016 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 45A03-1511-DR-1934 |
| v. | Appeal from the Lake Superior Court |
| Mark L. McDaniel, | The Honorable Calvin D. Hawkins, Judge |
| *Appellee-Respondent.* | Trial Court Cause No. 45D02-1111-DR-11 |

**Pyle, Judge.**

## Statement of the Case

The marriage of Janet L. McDaniel ("Mother") and Mark L. McDaniel ("Father') was dissolved eight years ago. For the past four years, Mother and Father have filed a constant stream of motions and petitions. After the parties attempted to mediate, the trial court held a hearing on several of the motions and petitions and entered findings of fact and conclusions thereon addressing the motions. Mother argues that the trial court abused its discretion by: (1) entering two findings of fact that were not supported by the evidence; (2) finding Mother in contempt; (3) failing to modify child support; and (4) admitting into evidence an email from Mother's former husband to Father. Finding no abuse of the trial court's discretion, we affirm.

Affirmed.

## Issues

I.    Whether two of the trial court's findings of fact were supported by the evidence;

II.    Whether the trial court abused its discretion in finding Mother in contempt;

III.    Whether the trial court abused its discretion in denying Mother's motion to modify child support;

IV.    Whether the trial court erred in admitting into evidence an email from Mother's former husband to Father.

## Facts

Mother and Father were married in 1997. Their daughter, A.M., was born in 2001, and their son, R.M., was born in 2002. Mother filed a dissolution petition in 2007, and the parties entered into a settlement agreement in 2008. Pursuant to the terms of this agreement, the parties agreed to share physical and legal custody of their children and to share the children's medical expenses and extra-curricular activity fees. They also agreed that Mother would "not pay child support to Father inasmuch as Mother w[ould] continue to maintain the life insurance policies on the parties' minor children." (App. 28).

In 2012, Mother filed petitions to modify custody and relocate to the State of Georgia where her new husband was on active military duty. The trial court denied both petitions on August 10, 2012, after a hearing. The trial court also ordered the parties to attend counseling to achieve the goal of "consistently demonstrat[ing] respect for one another, especially in front of the children." (App. 39). In addition, the trial court ordered Mother to pay $29.00 per week in child support. After the trial court read its order, Mother asked the trial court if she still had to maintain the life insurance policies for A.M. and R.M., and the trial court responded that she did.

In 2013, Father filed a petition for rule to show cause wherein he alleged that Mother had failed to pay child support for thirty-five weeks and was $1,015.00 in arrears. The trial court found Mother in contempt for her failure to pay child support and ordered her to commence payment of current support with an additional weekly payment on the arrearage. The trial court also ordered

Mother to pay Father's attorney $2,500.00 and to participate in counseling with Father. The court anticipated that the parties would select a counselor that would meet with them individually and jointly. Lastly, the trial court designated Mother to determine holidays and other issues pertaining to the Indiana Parenting Time Guidelines.

[6] In March 2014, Father filed another petition for rule to show cause alleging that Mother: (1) had refused to allow the children to be with Father on Christmas day; (2) was in arrears in child support yet had purchased a new home; (3) had ceased making payments on the life insurance policies, which had resulted in their cancellation; (4) had bought a house in a neighboring town without filing a notice of intent to relocate; (5) had alienated the parties' counselor; and (6) had refused to pay her share of the children's medical bills and extracurricular activity fees. Father asked the trial court to order Mother to pay his attorney fees.

[7] Two months later, in May 2014, Mother filed a second notice of intent to relocate. This time, Mother sought to relocate to Lowell, Indiana, which was apparently twenty-five minutes from her current residence. She stated that parenting time would remain unchanged as a result of the relocation. She also filed a petition for modification of the parenting time schedule and a rule to show cause wherein she alleged that Father had failed to pay his share of the children's life insurance premiums since the entry of the trial court's August 10, 2012 order. Specifically, Mother explained that the trial court had initially ordered her to maintain the life insurance policies in place of child support.

However, according to Mother, when the trial court ordered her to pay child support, Father should have become responsible for paying one-half of the life insurance premiums. Therefore, according to Mother, Father had accrued an arrearage on the premiums, which dated back to the entry of the August 10 order.

[8] Mother also complained that Father had refused to honor his obligation to offer her the right of first refusal to spend time with the parties' children when he was not available during his regularly scheduled parenting time. Mother further advised the trial court that she had obtained employment that offered health insurance coverage. She therefore asked the trial court to modify her $29.00 per week child support payment to account for her provision of health insurance. Mother further explained that the parties had met together with counsel on March 21, 2014 to discuss these issues but that Father and his counsel had terminated the meeting "relatively quickly" without addressing the issues that he had raised in his petition for rule to show cause. (App. 53). Mother asked the trial court to compel the parties to complete mediation and to order Father to pay her attorney fees.

[9] The trial court held a status conference in July 2014. At the conference, the parties agreed to conduct mediation, and Father agreed to provide his financial declaration form to Mother's counsel within fourteen days. In November 2014, Mother filed a motion to compel completion of mediation wherein she explained that although the parties had participated in mediation in one three-hour mediation session in September 2014, Father was currently refusing to

attend any further sessions. Rather, Father was opting to proceed to a hearing. Father responded that he was opposed to additional mediation because he was a high school special education teacher with limited personal time off. Father further explained that based on the fact that the terms of the mediation agreement were not acceptable to him as well as the fact that additional mediation would cost approximately $800.00 per hour, Father did not believe a second mediation session would be successful or cost effective.

[10] The trial court held a hearing on Mother's motion to compel mediation in January 2015. At the hearing, Father explained that the contempt issues and Mother's petition to modify support were not complicated issues and that a hearing would be "cheaper, quicker, faster for both parties to just present it to [the trial court] and get it done." (Tr. 29). The trial court scheduled a hearing on the remaining issues but ordered the parties to attempt settlement negotiations before the hearing.

[11] In March 2015, Mother filed a petition for modification and determination wherein she stated that A.M. "desire[d] to reside primarily with Mother and to attend the high school located in Mother's district beginning in the Fall of 2015 when [A.M. would] be a freshman in high school." (App. 74). Mother asked the trial court to "make a determination as to the issue of the child's residence and school attendance beginning with the Fall, 2015 . . . ." (App. 74). Mother subsequently filed a motion for an in camera interview wherein she asked the trial court to interview the parties' children, fourteen-year-old A.M. and twelve-year-old R.M.

[12] In June 2015, the trial court held a hearing on: (1) Father's March 2014 petition to show cause; (2) Mother's May 2014 petitions for modification and to show cause; and (3) Mother's March 2015 petition for modification and determination. Testimony at the hearing revealed that after the trial court had ordered both parents to participate in counseling in 2013, Father emailed Mother and suggested that they together choose a therapist that would help them become better parents. Mother responded that she already had a therapist, Choi. Father pointed out that Choi was the children's therapist and had clearly stated that she would not counsel either parent. Father further asked Mother to "talk and come to an agreement on a social worker." (Ex. D). Mother told Father not to e-mail her again regarding the matter. Father reminded Mother that they had been court-ordered to seek counseling. Mother and Father eventually selected Dr. Cathleen Amador ("Dr. Amador"), a psychologist.

[13] The evidence also revealed that Dr. Amador met with Mother and Father individually and then jointly. During the joint session, Mother made several hostile and provocative statements to Father, who became defensive. As the parties were leaving Dr. Amador's office, Mother told Father she had "information that was to his professional detriment." (Tr. 49). During the parties' second session with Dr. Amador, Mother was hostile to both Father and Dr. Amador. As a result of Mother's hostility, Dr. Amador suggested that the parties find a different therapist.

[14]     Evidence at the hearing also revealed that in December 2013, Father sent Mother an email with the timeline for his holiday parenting time, including an excerpt from the parenting time guidelines pursuant to which he would have had Christmas visitation from 12:00 p.m. until 9:00 p.m. Father told Mother that he would pick up the children at 2:30 so that they would not "have to rush out of the house." (Tr. 96). Mother told Father not to "make [her] file contempt charges for . . . trying to take [her] holiday this year." (Tr. 97). Father was not able to see the children until December 29.

[15]     Father also testified that he received insurance cancellation notices advising him that the children's life insurance premiums had not been paid. When Father contacted Mother and asked her to make the payments, Mother responded that she was not going to pay both the life insurance premiums and child support. Mother also explained that she had gotten behind on the payment of life insurance premiums because she was "getting dinged twice" by paying child support and life insurance premiums. (Tr. 84). She believed Father should pay for one-half of the premiums even though there was no court order that required him to do so. According to Father, Mother told him, "[y]ou pay one or I'm not going to do it." (Tr. 159). Father subsequently learned that Mother had been using the cash value of the life insurance policies to pay the premiums.

[16]     Father also testified that he learned in November 2013 that Mother was planning to relocate to Lowell, Indiana when R.M. showed Father a floor plan of Mother's new home. Mother, however, did not file a notice of intent to

relocate until May 21, 2014, two months after she closed on her new home and two weeks before she moved in. Father also testified that during middle school A.M was actively involved in choir, hand bells, and drama. Although Mother wanted A.M. to transfer to Lowell High School, which was within walking distance of Mother's new home, Father explained that Lake Central High School in A.M.'s current school district is a nationally ranked high school that offers courses such as bells and photography that unranked Lowell High School does not.

[17] Father submitted a copy of his 2014 federal income tax return, which showed that his total wages were $83,892.91. Although Father had traditionally provided health insurance coverage for the children, Mother testified that she chose to begin providing additional coverage for the children in April 2014. The cost for this coverage was $35.70 per week. When asked about the amount of her provider's deductible, Mother responded, "I believe [$]3,000 and [$]5,000." (Tr. 214) Although she was unsure about how the new coverage compared to Father's coverage, she acknowledged that she had only reimbursed Father $52.00 for medical expenses in the past two years. Mother also told the trial court that she would "be fine with just being the one to provide the health insurance coverage for the children . . . ." (Tr. 214). According to Mother's calculation on her child support obligation worksheet, if she provided the children's health insurance, she would no longer owe child support, and Father would owe $35.12 per week in child support. She further contended that under

this new system of support, Father had already accrued an arrearage of $3,462.48 retroactive to the date that Mother filed her petition to modify.

[18] Mother testified that she had not allowed the children to be with Father on Christmas Day in 2013 "[b]ecause [she] made a mistake and misread the guidelines." (Tr. 84). She also explained that she had a child support arrearage because "of that whole Target scandal where the system was broken into, and [she] was sent a new debit card. And [she] did not realize . . . . they didn't have the routing number, that they had my actual debit card number, and it was simply a mistake." (Tr. 223-24). She explained that she had missed the life insurance premium payments for the same reason. According to Mother, when she realized that the payments had not been automatically made, she paid them. Mother also explained that she had not paid her share of the children's extracurricular fees because she thought that Father had paid too much for A.M.'s accompanist and she did not "feel like [she] should be responsible when [Father] did not consult [her] at all about, you know, making the decision." (Tr. 244).

[19] Mother also complained that Father had failed to offer her the opportunity to have the children when he was unavailable. For example, during spring break, Father's family had the children during the day while Father worked. Mother thought Father should have offered her the opportunity to spend that time with the children. During cross-examination, Mother admitted that Father had not violated any court order by failing to offer her this opportunity.

[20] Mother further explained that she had experience in education and was "not somebody without some intellect." (Tr. 284). In her opinion, small schools, such as Lowell High School, offer opportunities that might not be available in larger schools, such as Lake Central High School. (Tr. 254). According to Mother, she attended a small high school and had a "phenomenal experience." (Tr. 254).

[21] Last, during re-direct examination, Mother testified that Father had sought out her former husband who lived in Georgia. During re-cross examination, Mother acknowledged that her former husband had sent a highly prejudicial email to Father. In the email, the former husband told Father in relevant part that Mother "turned in to quite the monster.....threatening restraining orders.....just like she did with you. Her goal is to swoon [A.M.] into moving with her.....and where [A.M.] goes.....[R.M.] will go. She has demonized you to both kids.....and her entire family.....just as I'm sure she is doing with me." (Ex. Y). The trial court admitted the email into evidence over Mother's hearsay objection. However, after admitting the email into evidence, the trial court told Mother that it would not consider it.

[22] At the conclusion of the hearing, the trial court denied Mother's request for an in camera interview with the children. Specifically, the trial court explained that both parents were good parents that loved their children. They just had problems with one another. The trial court was concerned that interviewing the children would "put[] them square in the middle regardless of what [the trial court] would decide. You know, '[d]id the Judge do "X" because I said "A, B,

or C?"'" (Tr. 300). The trial court believed the children were going through enough trauma as it was and did not want to cause them any further adverse effects.

[23] The trial court issued a nine-page detailed order on July 7, 2015. Although neither party requested findings of fact or conclusions, the order included twenty-four findings as well as the following conclusions:

> (a.)  Father's petition for Rule to Show Cause against Mother is granted in part. Mother violated the terms of the Court order as to Christmas Parenting Time. Although Mother violated the terms of the support order, Mother finds her violation not to be intentional and she has already cured the violation. Mother violated the Court order as to the payment of the premiums for the children's life insurance policies. Although ordered to pay the premiums and having been directly informed by the court to do so, Mother allowed the cash value of the policies to be used to pay the premiums. Mother failed to file her Notice of Intent to Relocate after she relocated. Mother further violated the Court's order regarding counseling by delaying the selection of a counselor and attending counseling with a hostile and aggressive demeanor which hindered the counseling process of moving forward in a positive manner to achieve the Court's goal of showing mutual respect.
>
> (b.)  Mother's Amended Notice to Relocate filed after her Petition to Modify Parenting Time stated that her move to Lowell would not cause a change in parenting time. Mother's request to modify is denied. Mother' Petition for Rule to Show Cause as to Father's failure to give Mother additional parenting time is denied. Mother was working during the time that the children spent with their relatives and Father was home to be with the children after his high school was let out for the day.

(c.) The parties share joint legal custody. Mother's request to modify their schooling is denied.

(d.) Father is given a judgment against Mother in the amount of Two Thousand Five Hundred ($2,500.00) Dollars for a portion of his attorney fees. Mother's request for Father to contribute to her attorney fees is denied.

(App. 23-24). Mother filed a ten-page motion to correct error, which raised ten allegations of error. The trial court denied the motion after a hearing. Mother appeals.

## Decision

Mother appeals the denial of her motion to correct error. Our standard of review in such cases is well-established. We review a trial court's ruling on a motion to correct error for an abuse of discretion. *Old Utica School Preservation, Inc. v. Utica Tp.*, 7 N.E.3d 327, 330 (Ind. Ct. App. 2014), *trans. denied*. An abuse of discretion occurs when the trial court's decision is contrary to the logic and effect of the facts and circumstances before it or the reasonable inferences therefrom. *Id.*

Here, the motion to correct error sought to set aside the trial court's detailed order in a family law matter where the trial court entered sua sponte findings. In such a situation, the specific findings control our review and the judgment only as to the issues those specific findings cover. *Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608, 614 (Ind. Ct. App. 2011), *trans. denied*. Where there are no specific

findings, a general judgment standard applies and we may affirm on any legal theory supported by the evidence adduced at trial. *Id.*

[26] We apply a two-tiered stand of review to sua sponte findings and conclusions. *Barkwill v. Cornelia H. Barkwill Revocable Trust*, 902 N.E.2d 836, 839 (Ind. Ct. App. 2009), *trans. denied.* Specifically, we determine whether the evidence supports the findings, and whether the findings support the judgment. *Id.* Findings and conclusions will be set aside only if they are clearly erroneous, which means that the record contains no facts to support them either directly or by inference. *Ghosh v. Ghosh*, 26 N.E.3d 986, 990 (Ind. Ct. App. 2015), *reh'g denied.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Barkwill*, 902 N.E.2d at 839. We consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility. *Id.*

[27] Additionally, we give considerable deference to the findings of the trial court in family law matters. *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013), *aff'd on reh'g.* This deference is a reflection that the trial court is in the best position to judge the facts, ascertain the family dynamics, and judge witness credibility. *Id.* We now turn to the specific issues in this case.

## I. Findings of Fact

[28] Mother first argues that two of the trial court's specific findings were not supported by the evidence. Specifically, Mother first directs us to Finding of

Fact Number 2, which provides that "prior to this hearing, the parties participated in a settlement conference, as well as an extensive mediation, the results of which were unsuccessful." (App. 17). Mother claims that this finding is not supported by the evidence because she believes that the parties' mediation session was not long enough to qualify as extensive. Mother also challenges Finding of Fact Number 22, which provides in relevant part that "Mother was unaware as to the amount of the deductible under her policy . . . ." (App. 22). According to Mother, she testified that the amount of her provider's deductible was $3,000 and $5,000.

[29]    When it makes special findings of fact, the trial court need not recite the evidence in detail, but must only make findings as to the ultimate facts necessary to support the judgment. *Riehle v. Moore*, 601 N.E.2d 365, 369 (Ind. Ct. App. 1992), *trans. denied*. This Court is to disregard any special findings that are based on facts not proper or competent to be considered, and such a finding cannot form the basis for a conclusion. *Id.* However, we may reverse a trial court's judgment only if its findings constitute prejudicial error. *Id.* A finding of fact is not prejudicial to a party unless it directly supports a conclusion adverse to her. *Id.* Here, even if Mother is correct that the trial court's two challenged findings were not supported by the evidence, we agree with Father that "[n]o aspect of the judgment relies on the above-stated findings." (Father's Br. 16). Specifically, the judgment does not rely in whole or in part on whether the parties' mediation was extensive or whether Mother knew the amount of her health insurance provider's deductible. Because these findings do not

directly support a conclusion of law adverse to Mother, there is no prejudice and no reversible error on this issue.[1]

## II. Contempt

[30] Mother also argues that the trial court abused its discretion in finding her in contempt. Whether a person is in contempt of a court order rests within the trial court's discretion. *In re the Matter of G.B.H.*, 945 N.E.2d 753, 755 (Ind. Ct. App. 2011). We review the trial court's findings for an abuse of discretion. *Id.* An abuse of discretion is shown only when the trial court's decision is against the logic and effect of the facts and circumstances before the trial court. *Id.* We do not reweigh the evidence or judge the credibility of witnesses, and we will affirm the trial court's contempt finding unless our review of the record leaves us with a firm and definite belief that a mistake has been made. *Id.* We have previously stated that we will reverse the trial court's contempt finding only if there is no evidence to support it. *Id.*

[31] Indirect contempt is the willful disobedience of any lawfully entered court order of which the offender had notice. *Akiwumi v. Akiwumi*, 23 N.E.3d 734, 737 (Ind. Ct. App. 2014). The determination of whether an alleged contemptuous

---

[1] In a related issue, although Mother alleges that the trial court "continually turne[ed] a blind eye to the Lake County Rules of Family Law and acknowledge[d] that [it would] allow parties to forego mediation if they would rather spend resources on litigation," she has failed to develop any argument or cite any authority in support of her allegation. She has therefore waived any challenge to the trial court's alleged failure to follow these local rules. *See Lyles v. State*, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005) (holding that a party waive an issue where the party fails to develop cogent argument or provide adequate citation to authority and portions of the record).

act was committed with the intent to show disrespect or defiance is a factual question to be decided by the court after hearing all of the evidence. *In re Hatfield*, 607 N.E.2d 384, 385 (Ind. 1993).

[32] Here, Mother first argues that the trial court abused its discretion in finding her in contempt for allowing the cash value of the children's insurance policy to pay the premiums. Specifically, Mother contends that there is insufficient evidence that she willfully disobeyed the court's order to pay the premiums for the children's insurance policies. Rather, according to Mother, she "had the mistake of forgetting to update her debit card information with the life insurance company." (Mother's Br. 20). However, our review of the evidence reveals that when the trial court ordered Mother to pay both the insurance premiums and child support, Mother told Father that she was not going to pay both and that she had gotten behind on paying the life insurance premiums because she was "getting dinged twice" by paying child support and life insurance premiums. (Tr. 84). She believed Father should pay for one-half of the premiums even though there was no court order that required him to do so. Mother told Father that he needed to pay one or she was not going to do it. This evidence is sufficient to show that Mother willfully disobeyed the court order that she pay the premiums. Mother's argument is an invitation for us to reweigh the evidence, which we cannot do. *See G.B.H.*, 945 N.E.2d at 755. The trial court did not abuse its discretion in finding Mother in contempt for failing to pay the insurance premiums.

[33] Mother also argues that the trial court erred in finding her in contempt for delaying the selection of a counselor and attending counseling sessions with a hostile and aggressive demeanor. Mother argues that there is insufficient evidence that she willfully disobeyed the court's order to select a counselor and attend sessions to achieve the goal of demonstrating respect for one another. Rather, according to Mother, her aggressive demeanor was brought about by the "'disaster' that was Dr. Amador." (Mother's Br. 22). However, our review of the evidence reveals that when the trial court initially ordered the parties to select a counselor, Father suggested to Mother that they choose a therapist together. Mother told Father not to email her further about the matter. After the parties eventually selected a therapist, Mother made hostile and provocative statements to Father during the first counseling session. During the second session, Mother was so hostile to both Father and the therapist that the therapist suggested that the parties find someone else to counsel them. This is sufficient evidence that Mother willfully disobeyed the trial court's order to select as counselor and attend counseling sessions. Mother's argument is another invitation for us to reweigh the evidence, which we cannot do. *See G.B.H.*, 945 N.E.2d at 755. The trial court did not abuse its discretion in finding Mother in contempt for delaying the selection of a counselor and attending counseling sessions with a hostile and aggressive demeanor.[2]

---

[2] Mother also argues that the trial court erred in finding her in contempt for failing to timely file her notice of intent to relocate. Mother's failure to timely file this notice did not violate a court order as required for a finding of contempt. Rather, Mother's untimely filing violated a statute. *See* IND. CODE § 31-17-2.2-3

### III. Modification of Child Support

[34] Mother further argues that the trial court erred in failing to grant her motion to modify child support. The gravamen of her argument is that the trial court should have granted her request to become the sole provider of health insurance coverage for the children. According to Mother's calculation, if she provided the children's health insurance, she would no longer owe $29.00 per week in child support, and Father would owe $35.12 per week in child support. She further contends that under this new system of support, Father had already accrued an arrearage of almost $3,500.00 retroactive to the date that Mother filed her petition to modify.

[35] Modifications of child support are reviewed for an abuse of discretion. *Miller v. Carpenter*, 965 N.E.2d 104, 108 (Ind. Ct. App. 2012). We grant latitude and deference to trial court judges in family law matters. *Id.* On appeal, we neither reweigh the evidence nor reassess witness credibility. *Id.* Rather, we consider

---

(requiring a ninety-day notice of an intent to relocate). Mother is correct that the statute does not included a "mechanism for contempt in the event a party files a tardy notice." (Mother's Br. 23). However, even if the trial court erred, there is sufficient evidence to support two of the contempt findings. Mother has not shown how one less finding of contempt would affect the contempt sanction, which appears to be the award of attorney fees to Father. We therefore find no reversible error.

Mother further argues that the trial court abused its discretion in failing to find Father in contempt for failing to offer her additional parenting time during spring break in 2015 while he was working during the day and the children stayed with members of Father's extended family. However, as previously stated, contempt is the willful disobedience of a court order, and Mother admitted at the hearing that there was no court order requiring Father to make such an offer. The trial court did not abuse its discretion in failing to find Father in contempt.

only the evidence most favorable to the judgment and the inferences flowing therefrom. *Id.*

[36] A modification of child support is governed by INDIANA CODE § 31-16-8-1, which provides that a child support order may be modified or revoked upon a showing of changed circumstances so substantial and continuing as to make the terms of the order unreasonable. *See id.* When confronted with a petition to modify a support order, the trial court must consider the totality of the circumstances involved in order to ascertain whether the modification is warranted. *Carter v. Dayhuff*, 829 N.E.2d 560, 570 (Ind. Ct. App. 2005). As the party seeking modification, Mother had the burden of establishing that she was entitled to have the child support order modified. *Id.*

[37] Here, our review of the evidence reveals that although Mother knew her health insurance coverage cost $35.70 per week, she was unsure about how the costs of her coverage, including deductibles and covered services, compared to Father's coverage. She did acknowledge that she had only reimbursed Father $52.00 for medical expenses in the prior two years. Without a comparison of the policies, Mother has failed in her burden to show changed circumstances so substantial and continuing as to make the terms of the current order unreasonable. Accordingly, the trial court did not abuse its discretion in failing to grant Mother's motion to modify child support.

## IV. Admission of Evidence

[38] Lastly, Mother argues that the trial court abused its discretion in admitting into evidence an email from Mother's former husband to Father. The email stated that Mother's goal was to convince the children to live with her, and that she was "demoniz[ing]" Father to both of the children. (App. 159). Mother claims that the trial court should not have admitted the email because it was hearsay. After admitting the email into evidence, the trial court told the parties that it was not going to consider it in making its decision.

[39] The trial court has broad discretion in ruling on the admissibility of evidence, and we will reverse only when the trial court has abused that discretion. *Davis v. Garrett*, 887 N.E.2d 942, 946 (Ind. 2008). An abuse of discretion will only be found if the trial court's decision is clearly against the logic and effect of the fact and circumstances before the court. *Id.* Further, errors in the admission of evidence, including hearsay, are harmless unless they affect the substantial rights of a party. *Id.* at 947. Here, where the trial court specifically told the parties that it was not going to consider the email, Mother's substantial rights were not affected. Accordingly, any error in the admission of this email was harmless.[3]

---

[3] Mother also argues that the "trial court erred in failing to consider the wishes of the children concerning the modification of the parenting plan structure and school district attendance." (Mother's Br. 32). Mother has waived appellate review of this issue because she has failed to cite any authority in support of it. *See Lyles*, 834 N.E.2d at 1050. Waiver notwithstanding, we find no error. The gravamen of her argument appears to be that the trial court abused its discretion when it denied her motion for an in camera interview of the children. Mother appears to believe that the trial court would have reached a different decision regarding the children's school district attendance had the trial court spoken to the children. However, the decision

Affirmed.

Kirsch, J., and Riley, J., concur.

---

whether to conduct an in camera interview is within the trial court's discretion. *Cunningham v. Cunningham*, 787 N.E.2d 930, 937 (Ind. Ct. App. 2003). Here, the trial court explained that it chose not to conduct an in camera interview with the children because it was concerned that the children would be detrimentally "put square in the middle regardless of what [the trial court] would decide." (Tr. 300). The trial court explained that it believed that the children had been traumatized enough by their parent's discord and did not want to cause them any further adverse effects. The trial court did not abuse its discretion in denying Mother's motion to conduct the in camera interview. Further, to the extent Mother appears to be challenging the trial court's failure to modify the structure of parenting time, she has also waived this issue for failure to develop a cogent argument and cite authority in support of it. *See Lyles,* 834 N.E.2d at 1050.