## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 07 2017, 8:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT S.G.

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEY FOR APPELLANT D.J.A.

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of D.A. Jr. (Minor Child) | April 7, 2017 |
| | Court of Appeals Case No. 33A05-1610-JT-2501 |
| S.G. (Mother), | Appeal from the Henry Circuit Court |
| and | |
| D.J.A. (Father), | The Honorable Jack A. Tandy, Senior Judge |
| *Appellants-Respondents,* | Trial Court Cause No. 33C01-1604-JT-13 |
| v. | |

The Indiana Department of
Child Services,

*Appellee-Petitioner*

**Crone, Judge.**

# Case Summary

S.G. ("Mother") and D.J.A. ("Father") each appeal the trial court's order involuntarily terminating their parental relationship with their minor son, D.A. Jr. We affirm.

# Facts and Procedural History

In April 2016, the Henry County Department of Child Services ("DCS") filed a petition to terminate both Mother's and Father's parental rights to D.A. Jr. Following a termination hearing on September 8, 2016, the trial court made the following relevant findings of fact:[1]

> 1. The child D.A. Jr. was born on April 2, 2015. Mother is D.A. Jr.'s mother. Father is D.A. Jr.'s father. The parents and D.A. Jr. are residents of Henry County, Indiana.
>
> 2. D.A. Jr. was the subject of a Child in Need of Services [("CHINS")] Case under Cause Number 33C01-1507-JC-000064. D.A. Jr. was removed from [parents'] care on July 17, 2015 and

---

[1] The trial court's termination order refers to the parties by their full names. We use "Mother," "Father," and the child's initials where appropriate.

has not been placed back in either parent's care. D.A. Jr. was detained because Mother was impaired due to the use of drugs while caring for D.A. Jr. and Father was incarcerated.

3. On July 30, 2015, D.A. Jr. was adjudicated a [CHINS].

4. On August 20, 2015, Mother submitted a drug screen that was positive for cocaine.

5. On August 28, 2015, a Dispositional Hearing was held. The Mother and Father were ordered to do the following:

   a. Contact the Family Case Manager [("FCM")] weekly;

   b. Notify the FCM of any changes in address, household composition, employment, and phone number within five (5) days of said change.

   c. Keep all appointments with DCS, service providers, [court-appointed special advocate], or give advance notice and good cause for missed appointments.

   d. Maintain suitable, safe, stable housing with adequate bedding, functional utilities, adequate supplies of food and food preparation facilities, and keep the family residence in a manner that is structurally sound, sanitary, clean, free from clutter, and safe for the child.

   e. Not use, consume, manufacture, trade, sell or possess or distribute any illegal controlled substance, and only take prescription medications in accord with how they are prescribed, and not permit the possession, use or consumption of any illegal controlled substances in the home or in the presence of the child.

   f. Obey the law.

   g. Ensure the family becomes engaged in home based

counseling, and participate to the extent recommended by the provider and DCS, and show positive changes.

   h.  Complete a substance abuse evaluation and comply with all treatment recommendations.

6.  On December 11, 2015, a Review Hearing was held in the CHINS case and the following findings were made:

   a.  Mother did not comply with the child's case plan.

   b.  Father did not comply with the child's case plan due to his incarceration.

   c.  Mother and Father had not visited the child.

   d.  Mother and Father did not cooperate with DCS.

   e.  Mother did not participate in any services since the Disposition.

   f.  Father had been incarcerated since September 27, 2015 after testing positive for illegal substances while at the House of Hope treatment facility.

7.  On March 4, 2016, Father submitted a drug screen that was positive for methamphetamine.

8.  On April 14, 2016, a Review Hearing was held in the CHINS case.  The Court made the following findings:

   a.  Mother was not in compliance with the case plan in that she had submitted positive drug screens and failed to participate in substance abuse treatment.  Jill Barnes, Mother's therapist at Lifeline Services, had attempted to provide services to Mother regarding employment, transportation and budgeting, but Mother failed to show for appointments after the initial appointment in

January 2016.

    b.  Father was not in compliance with the case plan.  Father spent most of 2015 incarcerated but was not in custody from December 2015 through March 2016.  During this later period, Father failed to participate in services offered by DCS.  Father submitted a drug test on March 4, 2016 that was positive for methamphetamine and was arrested on March 6, 2016.

    c.  The Court approved a permanency plan of termination of parental rights and adoption.

9.  Both Mother and Father have multiple criminal convictions in their lifetime.  Mother has been convicted of Criminal Conversion, Theft, and has pending charges of Possession of a Controlled Substance and Possession of Methamphetamine.  Father has been convicted of Operating A Motor Vehicle While Intoxicated, Criminal Confinement, Criminal Recklessness, Battery Resulting in Bodily Injury and Possession Of A Controlled Substance.

10.  Mother and Father's criminal lifestyle and substance abuse issues have prevented them from being appropriate parents to D.A. Jr.

11.  Mother and Father are not bonded to D.A. Jr.  D.A. Jr. has been in the care of foster care and his maternal grandmother for a great majority of his life.  D.A. Jr. has been placed with his maternal grandmother since August 2015.  D.A. Jr. has been removed from his [parents'] care under a Dispositional Decree in the CHINS case for more than six months.  Maternal grandmother desires to adopt D.A. Jr.

….

13.  The Court Appointed Special Advocate is in favor of the granting of the termination of the parents' rights as she believes

termination and adoption to be in the child's best interests.

14. DCS proposes that maternal grandmother adopt the child if the termination petition is granted.

Mother's App. Vol. 2 at 52-56.

[3] Based upon these findings of fact, the trial court concluded that: (1) there is a reasonable probability that the conditions that resulted in D.A. Jr.'s removal and continued placement outside the home will not be remedied by either parent; (2) termination of the parent-child relationship between both parents and D.A. Jr. is in his best interests; and (4) DCS has a satisfactory plan for the care and treatment of D.A. Jr., which is adoption by the maternal grandmother. Accordingly, the trial court determined that DCS had proven the allegations of the petition to terminate parental rights by clear and convincing evidence and therefore terminated Mother's and Father's parental rights. Each parent now appeals.

## Discussion and Decision

[4] "The purpose of terminating parental rights is not to punish the parents but, instead, to protect their children. Thus, although parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities." *In re A.P.,* 882 N.E.2d 799, 805 (Ind. Ct. App. 2008) (citation omitted). "[T]ermination is intended as a last resort, available only when all

other reasonable efforts have failed." *Id.* A petition for the involuntary termination of parental rights must allege in pertinent part:

> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > …
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove "each and every element" by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009); Ind. Code § 31-37-14-2. If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[5] "We have long had a highly deferential standard of review in cases involving the termination of parental rights." *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014).

> We neither reweigh evidence nor assess witness credibility. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Where the trial court enters findings

of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous.

*Id*. at 92-93 (citations omitted). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005).

[6] Mother and Father filed separate briefs on appeal raising some of the same and some different issues. Both parents challenge the sufficiency of the evidence to support the trial court's conclusions that there is a reasonable probability that the conditions that resulted in D.A. Jr.'s removal from and continued placement outside the home will not be remedied and that termination of their parental rights is in D.A. Jr.'s best interests. Father alone asserts that his due process rights were violated. We will address these arguments in turn.[2]

---

[2] We note that Mother also challenges three of the trial court's findings of fact, or portions thereof, as being unsupported by the evidence. Specifically, she challenges findings number 10, 11 and 13. However, even if we disregard the challenged portions of each of those findings, the evidence underlying the remaining unchallenged findings, which we discuss more fully below, provides ample support for the trial court's ultimate conclusions regarding a reasonable probability of nonremedied conditions and that termination of Mother's parental rights is in D.A. Jr.'s best interests. *See Kitchell v. Franklin*, 26 N.E.3d 1050, 1059 (Ind. Ct. App. 2015) (observing that appellate court need not separately analyze challenged findings if unchallenged findings amply support trial court's ultimate conclusions), *trans. denied*; *see also Riehle v. Moore*, 601 N.E.2d 365, 369 (Ind. Ct. App. 1992) (explaining that erroneous finding is grounds for reversal only if it constitutes sole support for any conclusion of law necessary to sustain judgment), *trans. denied*. Consequently, we need not separately analyze the challenged portions of the findings as, at most, they are surplusage that did not prejudice Mother.

# Section 1 – The record supports the trial court's conclusion that there is a reasonable probability of nonremedied conditions.

[7] Mother and Father both contend that DCS failed to present clear and convincing evidence that there is a reasonable probability that the conditions that led to D.A. Jr.'s removal and continued placement outside the home will not be remedied. In determining whether there is a reasonable probability that the conditions that led to a child's removal and continued placement outside the home will not be remedied, we engage in a two-step analysis. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1231 (Ind. 2013). First, "we must ascertain what conditions led to [his] placement and retention in foster care." *Id.* Second, "we 'determine whether there is a reasonable probability that those conditions will not be remedied.'" *Id.* (quoting *In re I.A.*, 934 N.E.2d 1132, 1134 (Ind. 2010) (citing *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997))). In the second step, the trial court must judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing a parent's recent improvements against "'habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation.'" *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014) (quoting *K.T.K.*, 989 N.E.2d at 1231). "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change." *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans.*

*denied*. The evidence presented by DCS "need not rule out all possibilities of change; rather, DCS need establish only that there is a reasonable probability that the parent's behavior will not change*." In re Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[8] It is undisputed that then three-month-old D.A. Jr. was initially removed from the home due to Mother's erratic behavior caused by methamphetamine use and her inability to safely care for her young child. Father was incarcerated at the time, so he also was unable to provide care or support for D.A. Jr. During the underlying CHINS matter, both parents acknowledged that they each had substance abuse problems that needed to be addressed. Regarding Mother, the record indicates that she was referred for a substance abuse assessment, which she never completed. DCS also referred Mother to a residential treatment program, which Mother began but was expelled from only a few days later due to noncompliance and rule violations. Case management services were also referred to help Mother obtain employment and suitable housing, but those services were discontinued due to Mother's failure to participate. The record further indicates that Mother submitted positive drug screens on at least two occasions.

[9] Regarding Father, although he was incarcerated during much of the pendency of the CHINS proceedings,[3] upon his release from incarceration, he took no

---

[3] The record indicates that Father was incarcerated at the time of D.A. Jr.'s removal from the home, but was then released and admitted to inpatient drug treatment at House of Hope treatment facility. He was again

action to begin services. The FCM testified that Father failed to contact her upon his release from incarceration in December 2015 or during the several months that he remained free. When he finally did encounter her at a court hearing in March 2016, he submitted to a drug screen in which he tested positive for methamphetamine. Father was immediately referred for services to help him with substance abuse, transportation, housing, budgeting, and employment. Father failed to follow through with any of those referrals and was arrested shortly thereafter for possession of a controlled substance. The record indicates that Father was released again, but then rearrested within a few days on additional charges.

[10] Both parents have criminal histories, and at the time of the termination hearing, both parents were incarcerated. Mother had pending charges of drug possession, disorderly conduct, and a probation violation in another county. Father had pending charges of possession of methamphetamine, possession of a hypodermic syringe, and maintaining a common nuisance.

[11] Mother and Father each assert that the trial court erroneously considered only their past behavior and failed to consider their respective parental fitness at the time of the termination hearing. We disagree. If there had been even the slightest of recent improvements by either one of these parents, we are confident that the trial court would have balanced those improvements with their habitual

incarcerated on September 27, 2015, after "providing a dirty drug screen while at the House of Hope." DCS Ex. 5.

patterns of drug abuse and criminal conduct. However, the trial court was simply faced with more of the same from both Mother and Father. Each parent's unwillingness to deal with parenting problems and cooperate with those providing services, and their apparent inability to refrain from criminal behavior, supports the trial court's conclusion that there is a reasonable probability that the conditions that led to D.A. Jr.'s removal and continued placement outside of both parents' care will not be remedied.

## Section 2 – The record supports the trial court's conclusion that termination is in D.A. Jr.'s best interests.

[12] Mother and Father next assert that the evidence does not support the trial court's conclusion that termination of their parental rights is in D.A. Jr.'s best interests. In considering whether termination of parental rights is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In doing so, the trial court must subordinate the interests of the parent to those of the child involved. *Id.* Further, this Court has previously determined that the testimony of the caseworker, a guardian ad litem, or a court-appointed special advocate regarding the child's need for permanency supports a finding that termination is in the child's best interests. *Id.*; *see also Matter of M.B.*, 666 N.E.2d 73, 79 (Ind. Ct. App. 1996), *trans. denied*.

[13] FCM Amy Banta testified that she had worked with this family since the very beginning of the CHINS proceedings and was most concerned about "the

ongoing inability for either parent to provide a stable home, a steady income, the ability to parent this child, there's ongoing concerns with substance abuse issues." Tr. at 45. She further noted, "There's been a lack of treatment, ongoing criminal charges, just that instability that would provide a young child." *Id.* She opined that, due to D.A. Jr.'s young age, a permanency plan of adoption was in his best interests. Banta stated that D.A. Jr. was doing quite well and was very bonded with his maternal grandmother, and that she believed that maternal grandmother's permanent adoption of D.A. Jr. was in his best interests.

[14] This testimony regarding D.A. Jr.'s need for permanency and stability, when considered with the trial court's unchallenged factual findings regarding Mother's unwillingness to complete services and Father's failure to contact DCS or attempt to participate in services during his release from incarceration, as well as evidence of each parent's failure to refrain from drug-related criminal activity, was sufficient to support the trial court's conclusion that termination of both Mother's and Father's parental rights is in D.A. Jr.'s best interests. Mother's and Father's claims to the contrary merely amount to invitations for this Court to reweigh the evidence, which we will not do. *See C.A.*, 15 N.E.3d at 92-93.

[15] This Court has recognized that "[i]ndividuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children." *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006) (quoting *Matter of A.C.B.*, 598 N.E.2d

570, 572 (Ind. Ct. App. 1992)), *trans. denied*. Both parents have historically been unable to provide stability for their infant son, and their incarceration at the time of the termination hearing was strong evidence of their current inability to do the same. The trial court did not have to wait until D.A. Jr. becomes harmed irreversibly such that his physical, mental, and social development is permanently impaired before terminating Mother's and Father's parental rights. *See In re C.M.*, 675 N.E.2d 1134, 1140 (Ind. Ct. App. 1997). The evidence supports the trial court's conclusion that termination of both Mother's and Father's parental rights is in D.A. Jr.'s best interests.[4]

## Section 3 – Father has waived his due process claim and, waiver notwithstanding, he has shown no violation.

[16] As a final matter, Father argues that his due process rights were violated because he was never given a meaningful opportunity to participate in services and work towards reunification with D.A. Jr. due to his incarceration. Father does not direct us to any point in the record where he raised this due process issue before the trial court. Issues not raised at the trial court, including constitutional claims, are waived on appeal. *McBride*, 798 N.E.2d at 194. "In order to properly preserve an issue on appeal, a party must, at a minimum, 'show that it gave the trial court a bona fide opportunity to pass upon the merits of the claim before seeking an opinion on appeal.'" *Cavens v. Zaberdac*, 849

---

[4] Father likens his situation to that of the incarcerated fathers in *In re R.S.*, 56 N.E.3d 625 (Ind. 2016) and *Rowlett v. Vanderburgh County Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2005), *trans. denied*, (2006). We see very few similarities and find both cases inapposite.

N.E.2d 526, 533 (Ind. 2006) (quoting *Endres v. Ind. State Police*, 809 N.E.2d 320, 322 (Ind. 2004)). Thus, this issue is waived.

[17]    Waiver notwithstanding, Father's argument fails. First, contrary to Father's assertions, DCS is not required to offer a parent services aimed at reunification with the child when the parent is incarcerated. *See Castro*, 842 N.E.2d at 377 (determining DCS's failure to offer incarcerated parent services did not constitute deprivation of due process rights). Indeed, "the law concerning termination of parental rights does not require [DCS] to offer services to the parent to correct the deficiencies in childcare." *In re B.D.J.*, 728 N.E.2d 195, 201 (Ind. Ct. App. 2000). "Rather, while a participation plan serves as a useful tool in assisting parents in meeting their obligations, and while county departments of public welfare routinely offer services to assist parents in regaining custody of their children, termination of parental rights may occur independently of them, as long as the elements of Ind. Code § 31-35-2-4 are proven by clear and convincing evidence." *Id*.

[18]    Moreover, it is undisputed that Father appeared at the CHINS initial hearing, during which he was advised by the trial court regarding the parental participation plan and the possible consequences for failure to comply, and that he also appeared at the CHINS dispositional hearing, during which the trial court ordered him to participate in specific services. It is similarly undisputed that, although Father was incarcerated for a period of time and unable to participate in some services, he was not in custody for several months and could have participated in services but failed to do so. "A parent may not sit idly by

without asserting a need or desire for services and then successfully argue that he was denied services to assist him with his parenting." *Id.* Father has not shown that he was denied due process.

[19] In sum, we will reverse a termination of parental rights only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made. *In re A.N.J.*, 690 N.E.2d 716, 722 (Ind. Ct. App. 1997). Based on the record before us, we cannot say that the trial court's termination of Mother's and Father's parental rights to D.A. Jr. was clearly erroneous. Therefore, we affirm.

[20] Affirmed.

Baker, J., and Barnes, J., concur.